1   Michael Allen (admitted to appear *pro hac vice*)
    *mallen@relmanlaw.com*
2   D. Scott Chang (SBN 146403)
    *schang@relmanlaw.com*
3   Jamie L. Crook (SBN 245757)
    *jcrook@relmanlaw.com*
4   **RELMAN, DANE & COLFAX PLLC**
    1225 19th Street, NW, Suite 600
5   Washington, DC 20036
    Telephone: 202-728-1888
6   Facsimile: 202-728-0848

7   Louis A. Rafti (SBN 243813)
    *LARafti.Law@gmail.com*
8   12209 Emelita Street
    North Hollywood, CA 91607
9   Telephone: (818) 392-0913

10  *Attorneys for Plaintiff*

11

12              UNITED STATES DISTRICT COURT
                CENTRAL DISTRICT OF CALIFORNIA
13                    (WESTERN DIVISION)

14
    **MEI LING,**                        | Case No. 2:11-cv-7774-SVW
15
                            Plaintiff,   | **PLAINTIFF'S OPPOSITION TO**
16                                        | **LEGACY PARTNERS**
                — *v.* —                 | **RESIDENTIAL, INC.'S MOTION**
17                                        | **FOR SUMMARY JUDGMENT**

18  **CITY OF LOS ANGELES,**             | Hearing: October 22, 2012, 1:30 p.m.
    **CALIFORNIA; COMMUNITY**            | Judge: Hon. Stephen V. Wilson
19  **REDEVELOPMENT AGENCY OF**          | Courtroom: Number 6, 2nd Floor
    **THE CITY OF LOS ANGELES;**
20  Redrock NoHo Residential, LLC; JSM   | Complaint Filed: Sept. 20, 2011
    Florentine, LLC; Legacy Partners     | Trial Date: Nov. 27, 2012
21  Residential, Inc.; FPI Management, Inc.;
    and Guardian/KW NoHo, LLC,
22
23                          Defendants.
24
25
26
27
28

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................iii

INTRODUCTION ......................................................................................... 1

FACTUAL OVERVIEW ............................................................................... 3

LEGAL STANDARD .................................................................................... 7

ARGUMENT ................................................................................................. 7

I.     Framework for Establishing a Retaliation Claim under the Fair
       Housing Act and FEHA ..................................................................... 8

II.    Plaintiff Has Established a Prima Facie Case of Retaliation .................... 9

III.   Legacy Has Not Established the Absence of Any Disputed Facts
       Regarding its Asserted Justification for Calling the Police .................... 13

       A. Legacy Asserts No Justification for the October 2009
          Incident ......................................................................................... 13

       B. A Reasonable Jury Could Conclude from the Record that
          Legacy's Asserted Justification for the November 2009
          Incident is Pretextual .................................................................... 14

CONCLUSION............................................................................................. 17

1                    **TABLE OF AUTHORITIES**

2   <u>Cases</u>

3   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)..................................................7

4   *Binns v. City of Marietta Hous. Assistance Program*, No. 107-cv-0070,
        2010 WL 1138453 (N.D. Ga. Mar. 22, 2010)..........................................9-10

5
6   *Boswell v. Gumbaytay*, No. 2:07-CV-135, 2009 WL 1515872
        (M.D. Ala. June 1, 2009)............................................................12

7   *Chew v. Hybl*, No. C96-03459 , 1997 WL 33644581
        (N.D. Cal. Dec. 9, 1997)...........................................................12

8
9   *Edwards v. Marin Park, Inc.*, 356 F.3d 1058 (9th Cir. 2004)...............................8, 9

10  *Holley v. Crank*, 400 F.3d 667 (9th Cir. 2005)........................................................12

11  *Hood v. Midwest Sav. Bank*, 95 F. App'x 768 (6th Cir. 2004) ...........................10

    *Hous. Rights Ctr. v. Sterling*, 404 F. Supp. 2d 1179 (C.D. Cal. 2004) ....................9
12
13  *Hunt v. Cromartie*, 526 U.S. 541 (1999) ...........................................................7

14  *In re Wells Fargo Residential Mortg. Lending Discrimination Litig.*,
        No. M:08-CV-1930, 2010 WL 3037061 (N.D. Cal. July 30, 2010)............12

15  *Marton v. Lazy Day Property Owners Ass'n, Inc.*, No. 2:10-cv-117,
        2011 WL 1232375 (M.D. Fla. Mar. 30, 2011)...................................12
16
17  *Matarese v. Archstone Pentagon City*, 795 F. Supp. 2d 402
        (E.D. Va. 2011) ......................................................................10

18  *Meyer v. Holley*, 537 U.S. 280 (2003)...............................................................12

19  *Neudecker v. Boisclair Corp.*, 351 F.3d 361 (8th Cir. 2003) ...............................12

20  *Pom Wonderful LLC v. Welch Foods, Inc.*, 737 F. Supp. 2d 1105 (C.D. Cal.
        2010)...................................................................................7
21
    *Sofarelli v. Pinellas Cnty.*, 931 F.2d 718 (11th Cir. 1991)....................................12
22
    *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n,* 809 F.2d 626 (9th
23      Cir.1987)................................................................................7

24  *United States v. Habersham Props., Inc.*, 319 F. Supp. 2d 1366 (N.D. Ga.
        2003).....................................................................................12
25
    *United States v. Hayward*, 36 F.3d 832 (9th Cir. 1994)......................................9
26
    *Walker v. City of Lakewood*, 272 F.3d 1114 (9th Cir. 2001) ..........................*passim*
27

28

- iii -
Ling v. City of Los Angeles *et al.*, Case No. 2:11-cv-7774-SVW
Plaintiff's Opposition to Legacy Partners Residential, Inc.'s Motion for Summary Judgment

1    <u>Statutes and Regulations</u>

2    24 C.F.R. § 100.400 ...................................................................................... 10

3    42 U.S.C. § 3604 .......................................................................................... 8, 9

4    42 U.S.C. § 3615 ............................................................................................ 17

5    42 U.S.C. § 3617 ...................................................................................... *passim*

6    Cal. Civ. Code § 2295 ................................................................................... 12

7    Cal. Civ. Code § 2330 ................................................................................... 12

8    Cal. Gov't Code § 12955 ............................................................................. 8, 9

9    Cal. Gov't Code § 12955.1 .............................................................................. 8

10   Cal. Gov't Code § 12955.7 ...................................................................... 1, 3, 8

11   <u>Rules</u>

12   Fed. R. Civ. P. 56 .................................................................................... *passim*

13   Fed. R. Evid. 801 .......................................................................................... 11

14   Fed. R. Evid. 802 .................................................................................... 11, 14

15   Fed. R. Evid. 803 .......................................................................................... 11

16   <u>Other Authorities</u>

17   *Webster's Third New Int'l Dict.* (14th ed. 1961) ....................................... 12

18

19

20

21

22

23

24

25

26

27

28

**INTRODUCTION**

Defendant Legacy Partners Residential, Inc.'s ("Legacy") Motion for Summary Judgment (Dkt. 150) on Plaintiff Mei Ling's retaliation claims rests on factually unsupported assertions and inadmissible hearsay statements concerning Ms. Ling's attempts to obtain information about her applications for tenancy in an affordable apartment unit at the multi-family housing development called NoHo 14, which Legacy managed.  Legacy has not sustained its burden on summary judgment to establish the absence of any genuine factual disputes material to its asserted justification for calling the police in order to have Ms. Ling removed from the NoHo 14 premises.  A reasonable jury could find from the evidence that Legacy's true purpose in calling the police was to interfere with Ms. Ling's efforts to obtain housing, in violation of the Fair Housing Act, 42 U.S.C. § 3617, and the California Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code 12955.7. [1] Because Legacy has not established that it is entitled to judgment as a matter of law on Ms. Ling's retaliation claims, its Motion for Summary Judgment should therefore be denied.

Ms. Ling has a mobility impairment and uses a wheelchair at all times. She has presented evidence that she applied for tenancy in an affordable apartment unit at NoHo 14 starting in 2008 and that she made visits to the NoHo 14 development in 2009 in order to follow up on the status of her applications, view unit configurations to determine whether any modifications would be needed should she be offered a unit, ensure that the management

---

[1] Legacy states that it also moves for summary judgment on Ms. Ling's reasonable accommodation claims with respect to The Lofts development and incorporates by reference the Motion for Summary Judgment filed by Defendant RedRock NoHo Residential, LLC.  *See* Legacy Mem. (Dkt. 150-1) at 5.  Ms. Ling likewise incorporates by reference her concurrently filed Opposition to RedRock NoHo Residential, LLC's Motion for Summary Judgment as her grounds for opposing Legacy's request for summary judgment on Ms. Ling's reasonable accommodation claims against Legacy.

1    staff were aware of her reasonable accommodation requests, and accompany

2    other wheelchair users seeking to view the property's wheelchair-accessible

3    units.  On two separate visits, in October 2009 and November 2009, Legacy's

4    property manager called the police to have Ms. Ling and her companions

5    removed from the premises.  A reasonable jury could easily infer from the

6    record evidence that this conduct constituted impermissible interference with

7    Ms. Ling's exercise of fair housing rights that are protected under state and

8    federal law.

9         Legacy has asserted a justification for one but not both of these

10   incidents.  Summary judgment as to the first incident in October 2009, for

11   which Legacy has no explanation, is therefore improper.  Summary judgment

12   must also be denied as to the November 2009 incident because Legacy has

13   failed to meets its burden under Rule 56 of the Federal Rules of Civil

14   Procedure to establish the absence of any factual disputes concerning its

15   asserted justification.  According to Legacy, its property manager at NoHo 14

16   decided to call the police because Ms. Ling and her companions, who were

17   also in wheelchairs, were intimidating Legacy staff, refused to leave when

18   asked, and were blocking the entrance and exit to the property.  The only

19   evidence identified by Legacy to support this explanation consists of hearsay

20   testimony by the property manager, who lacked personal knowledge of the

21   events reported to him by his staff.  Even if Legacy's evidence were

22   admissible, it is disputed by Ms. Ling's deposition testimony and other record

23   evidence, as set forth herein.  The existence of significant factual disputes

24   concerning the validity of Legacy's asserted justification precludes summary

25   judgment on Ms. Ling's retaliation claims arising out of the November 2009

26   incident when police were called to remove her from NoHo 14.

27        For the reasons set forth in detail below, Ms. Ling respectfully requests

28   that the Court deny Legacy's Motion for Summary Judgment on her retaliation

1    claims under the Fair Housing Act, 42 U.S.C. § 3617, and FEHA, Cal. Gov't

2    Code Sec. 12955.7.

3                          **FACTUAL OVERVIEW**

4         Plaintiff Mei Ling suffers from spinal conditions including spinal

5    stenosis and spondylosis, which is a painful condition resulting from the

6    degeneration of the spine's intervertebral disks.  Ling Dep. 8:13-15, 8:18-20,

7    8:22-23.[2]  She has been non-ambulatory and has used a wheelchair since

8    2006.  *Id.* 10:16-21, 10:24-11:2.

9         Because of her mobility impairment, Ms. Ling requires assistance with

10   personal care and other routine tasks.  Ling Dep. 20:23-24, 25:8-23, 26:8-13,

11   29:24-25, 40:23-25, 41:10-19, 45:1-6, 45:14-23.  Her physical disability

12   prevents her from obtaining employment.  Ms. Ling cannot earn an income

13   because of her disability and subsists on a small monthly stipend from Los

14   Angeles County's General Relief program, in the amount of $221.  Ling Dep.

15   179:14-21.  Because of her financial circumstances, Ms. Ling cannot afford to

16   live in market-rate housing without government assistance.  Ling Dep. 179:5-

17   13, 179:19-21.  Ms. Ling thus requires an affordable dwelling unit that is also

18   wheelchair-accessible.

19        Ms. Ling became homeless in or around June 2006.  Ling Dep. 30:10-

20   18.  Since that time, she has sought to obtain affordable, wheelchair-accessible

21   housing in CRA-supported buildings located in various parts of the City.

22        In April 2007, Ms. Ling obtained a Housing Choice Voucher (formerly

23   denominated and still commonly called a Section 8 voucher), administered by

24   the Housing Authority of the City of Los Angeles ("HACLA").  Ms. Ling's

25   Housing Choice Voucher currently provides her approximately $1,400 per

26   month to apply to the rental of a two-bedroom apartment unit at The

27   ───────────────
     [2] The cited excerpts to Ms. Ling's deposition testimony are included as Exhibit

28   24 to the concurrently filed Declaration of Mei Ling.

1   Piedmont.  Ling Dep. 62:7-15; Ling Decl. ¶ 9.

2         Ms. Ling's current dwelling unit is not fully accessible to her.  Among

3   other barriers, she cannot use the shower, cannot use the toilet without

4   assistance, and cannot utilize all features of the kitchen.  Ling Dep. 34:17-23,

5   37:1-11, 37:14-43:3.  In addition, public transportation opportunities to and

6   from The Piedmont are limited and difficult for Ms. Ling to access.  Ling

7   Decl. ¶ 25.

8         NoHo 14 (formerly called JSM Florentine) is a multi-family residential

9   property.  Legacy Statement of Uncontroverted Facts (Dkt. 150-4) ¶ 5.

10  Pursuant to a covenant between the Community Redevelopment Agency of

11  Los Angeles ("CRA") and the owner of NoHo 14, a certain number of units

12  must be rented at rates that are affordable to low-income tenants.  *Id.* ¶ 7.

13  Defendant Legacy managed NoHo 14 from October 2009 until approximately

14  September 2010.  *Id.* ¶ 6.

15        Since 2008, Ms. Ling has submitted multiple applications for tenancy at

16  the NoHo 14 development.  Ling Dep. 91:14-20; Ling Decl. ¶¶ 47, 49, 74 &

17  Ex. 22.  Ms. Ling made frequent visits to NoHo 14 to see the unit

18  configurations so that she could evaluate potential modifications that might be

19  necessary to make a unit accessible in light of her specific needs, to inquire

20  about the status of her applications, and to convey her reasonable

21  accommodation requests.  Ling Dep. 103:15-17, 104:1-5, 104:14-23, 105:2-6,

22  105:15-17; Ling Decl. ¶ 54.  On her visits to NoHo 14, Ms. Ling was

23  frequently accompanied by a caseworker and/or other wheelchair users

24  seeking housing.  Ling Dep. 103:15-22.  Ms. Ling was informed on various

25  occasions that her name was on an interest list or a waitlist.  Ling Dep.

26  107:16-22.  She understood these terms to have the same meaning.  *Id.* at

27  107:23-108:1.

28        During two such visits, representatives of Legacy called the police with

1   the purpose of having Ms. Ling and her companions removed from the

2   premises.  The first occasion was on or around October 10, 2009.  Ling Decl. ¶

3   86.  The second occasion was on or around November 1, 2009.  *Id.*

4       For the October 2009 incident, Ms. Ling was present at NoHo 14 with

5   Ali Jahanabad and Sandy Varga.  They were given a partial tour by a leasing

6   agent named Maria Elizarraraz.  Ling Decl. ¶ 87; Ling Dep. 122:16-19.  While

7   they were touring units on the fifth floor, Maria received a telephone call and

8   left Ms. Ling, Ms. Varga, and Mr. Jahanabad on the fifth floor while she went

9   to her office.  After leaving to take the telephone call, Maria never returned for

10  the group.  Ling Decl. ¶ 87.

11      After it became clear that Maria was not going to return, Ms. Ling and

12  her companions decided to go back downstairs.  When they reached the

13  mezzanine level, they saw Maria at her desk.  They asked her why she had left

14  them upstairs and asked her to resume the tour, indicating that they wanted to

15  see specific additional units.  *Id.* ¶¶ 88-89.  Maria refused to continue the tour

16  at that time, stating that she had an appointment.  *Id.*

17      Ms. Ling and her companions decided to wait for Maria to finish her

18  appointment in order to resume the tour on that day.  They waited for Maria in

19  the lobby, expecting that Maria would find them and resume the tour.  *Id.* ¶ 89.

20  After approximately one hour, a man named Max came by and told them that

21  they should leave because the police had been called.  *Id.*; Ling Dep. 123:1-4,

22  125:13-14.  The group waited an additional hour, but Maria never returned,

23  and the group did not see any police officers.  Ms. Ling later called the police

24  station and learned that Legacy had called the police and that officers arrived

25  at the development after she and her companions had left.  Ling Dep. 123:19-

26  25; Ling Decl. ¶ 89.

27      During the November 2009 visit, Ms. Ling was present at NoHo 14 with

28  Mr. Jahanabad, Ms. Varga, Cynde Soto, and Jolene Dalcour.  Ling Dep.

1   111:20-112:9.[3]  Legacy representative Michael Hunter was giving the group a

2   tour of the development.  During the tour, Mr. Hunter was unable to answer all

3   of the group's questions, and he therefore made several phone calls to the

4   property manager, Thomas Meredith.  Ling Dep. 114:9-13.  Mr. Hunter

5   mistakenly suspected that someone was recording him because one member of

6   the group was having difficulties using her smartphone, which at one point

7   emitted a bright light.  Ling Decl. ¶ 92; Ling Dep. 120:15-121:2.  No one from

8   the group was recording Mr. Hunter during the tour.  Ling Decl. ¶ 92; Ling

9   Dep. 120:15-121:6.

10        After he showed us two units, Mr. Hunter told the group that he had to

11   take them downstairs.  Ling Decl. ¶ 93.  Because of the group's size and the

12   fact that Ms. Ling, Mr. Jahanabad, and Ms. Varga were all in wheelchairs,

13   they had to take separate elevators.  *Id.*; Ling Dep. 116:6-9.  Ms. Ling took the

14   second elevator.  *Id.*  When she exited the elevator, two police officers were

15   already present in the lobby.  Ling Dep. 115:21-22, 117:2-4, 117:10-17,

16   118:12-15; Soto Decl. ¶¶ 7-9.

17        Two more police officers arrived soon afterwards.  The police told Ms.

18   Ling and her companions they were there to escort the group out of the

19   building.  The group proceeded to leave the building.  Ling Dep. 117: 8-11.

20   Outside, Ms. Ling heard Mr. Meredith state to the police that the called them

21   because Legacy did "not want to do business with" Ms. Ling and her

22   companions.  Ling Decl. ¶ 94.

23        At no point during the October 2009 or November 2009 visits to NoHo

24   14 did Ms. Ling or anyone accompanying her on the visit block any entrance

25   _____

26   [3] During her deposition Ms. Ling at first mistakenly stated that the second
incident when Legacy called the police occurred in October 2009.  The first

27   incident was in October 2009, and the second incident, also addressed in Mr.
Meredith's Declaration, took place in November 2009.  Ling Dep. 124:18-22;

28   Ling Decl. ¶¶ 86, 90.

1   or exit to NoHo 14, or otherwise interfere with the coming and going of

2   tenants or anyone else.  Ling Decl. ¶ 95; Soto Decl. ¶ 9.

3                                    **LEGAL STANDARD**

4           Summary judgment should be denied unless the record "shows that

5   there is no genuine dispute as to any material fact and that the movant is

6   entitled to judgment as a matter of law."  Fed. R. Civ. Pro. 56(a).  A material

7   fact is one that could "affect the outcome of the suit under the governing law."

8   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A "genuine issue"

9   exists "if the evidence is such that a reasonable jury could return a verdict for

10  the nonmoving party."  *Id.*

11          At the summary judgment stage, the Court may not make credibility

12  determinations or weigh conflicting evidence and must draw all inferences "in

13  the light most favorable to the nonmoving party."  *See T.W. Elec. Serv., Inc. v.*

14  *Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir.1987); *see also*

15  *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999) (holding that at summary

16  judgment "the nonmoving party's evidence is to be believed, and all justifiable

17  inferences are to be drawn in that party's favor" (internal quotation marks and

18  brackets omitted)).

19          The moving party bears the burden of demonstrating the absence of a

20  genuine issue of material fact for trial, with evidence that would be admissible.

21  *Anderson*, 477 U.S. at 256; Fed. R. Civ. P. 56(c)(1), (4).  Only if the moving

22  party makes this showing does the burden shift to the non-moving party to

23  identify "specific facts showing that there is a genuine issue for trial."  *Pom*

24  *Wonderful LLC v. Welch Foods, Inc.*, 737 F. Supp. 2d 1105, 1108 (C.D. Cal.

25  2010) (internal quotation marks omitted).

26                                       **ARGUMENT**

27          Legacy's motion for summary judgment must be denied because

28  Legacy has not established the absence of any genuine disputed facts material

1   to Ms. Ling's retaliation claims under the Fair Housing Act and FEHA.

2   **I.     Framework for Establishing a Retaliation Claim under the Fair
3            Housing Act and FEHA**

4            Section 818 of the Fair Housing Act makes it "unlawful to coerce,
5   intimidate, threaten, or interfere with any person in the exercise or enjoyment
6   of, or on account of his having exercised or enjoyed, or on account of his
7   having aided or encouraged any other person in the exercise or enjoyment of,
8   any right granted or protected by section 3603, 3604, 3605, or 3606 of this
9   title." 42 U.S.C. § 3617; *see also* Cal. Gov't Code § 12955.7 (establishing
10  verbatim prohibition under FEHA against interference with the exercise of
11  rights guaranteed by Sections 12955 and 12955.1 of that Act).  The anti-
12  retaliation provisions in the Fair Housing Act and FEHA are construed and
13  applied identically.  *Walker v. City of Lakewood*, 272 F.3d 1114, 1125-26 (9th
14  Cir. 2001).[4]

15           The elements of a prima facie case of retaliation under the Fair Housing
16  Act and FEHA are: (1) the plaintiff engaged in protected activity; (2) the
17  defendant subjected her to an adverse action; and (3) a causal link exists
18  between the protected activity and the adverse action.  *See Walker*, 272 F.3d at
19  1128.[5]  If the plaintiff establishes a prima facie case, the burden then shifts to
20  the defendant to articulate a legitimate, non-discriminatory reason for its
21  conduct.  *Id.*  If the defendant "articulates such a reason, the plaintiff bears the
22  ultimate burden of demonstrating that the reason was merely a pretext for a
23  discriminatory motive." *Id.*  Thus, if Ms. Ling's evidence creates a genuine

24  ─────────────
25  [4] Legacy agrees that the two claims are "substantially identical."  Legacy
    Mem. at 7 n.3.

26  [5] It is not necessary to prove an underlying housing discrimination claim.  *See*
27  *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1063 (9th Cir. 2004) (holding
    that establishing a violation of § 3604 is not a prerequisite to stating a claim
    under § 3617); *Walker*, 272 F.3d at 1125 ("[E]ven parties who may not bring
28  **discrimination** claims under the FEHA may bring **retaliation** claims.").

1  dispute as to whether Legacy's asserted justification is pretextual, her

2  retaliation claims must proceed to trial.  *Id.* at 1131 (reversing summary

3  judgment for defendant where plaintiff's evidence placed city's motivations

4  for taking adverse action against plaintiff in dispute).

5  **II.  Plaintiff Has Established a Prima Facie Case of Retaliation.**

6  As the Ninth Circuit held in *Walker*, 42 U.S.C. § 3617 applies broadly

7  "'to reach all practices which have the effect of interfering with the exercise of

8  rights under the federal fair housing laws.'"  272 F.3d at 1129 (quoting *United

9  States v. Hayward*, 36 F.3d 832, 835 (9th Cir. 1994)).  Conduct such as

10  encouraging others in the exercise of fair housing rights, conducting fair

11  housing investigations of an apartment complex, and facilitating others' efforts

12  to assert and vindicate their fair housing rights all constitute activity that is

13  protected under the Fair Housing Act.  *See Walker*, 272 F.3d at 1128;

14  *Edwards*, 356 F.3d at 1063.  FEHA's fair housing provisions protect virtually

15  identical activity, in addition to even broader categories of conduct that are not

16  explicitly enumerated in the Fair Housing Act.  *Compare* 42 U.S.C. § 3604

17  *with* Cal. Gov't Code Sec. 12955; *see also Hous. Rights Ctr. v. Sterling*, 404

18  F. Supp. 2d 1179, 1194 (C.D. Cal. 2004) (recognizing that the protections of

19  FEHA exceed those of the federal Fair Housing Act).

20  Ms. Ling engaged in protected activity in submitting applications for

21  tenancy in an affordable unit at NoHo 14, making other visits to the property

22  to follow up on the status of her applications and express her reasonable

23  accommodation requests, and assisting others seeking housing at NoHo 14.

24  The exercise of one's right to apply and be considered for tenancy in a

25  dwelling unit of one's choice without discrimination, including the requesting

26  of reasonable accommodations that will eliminate accessibility barriers, is one

27  of the core guarantees of § 3604.  *Binns v. City of Marietta Hous. Assistance

28  Program*, No. 107-cv-0070, 2010 WL 1138453, at *8  (N.D. Ga. Mar. 22,

1   2010) (denying motion for summary judgment where jury could find that

2   defendant "retaliated against Plaintiff in its treatment of her in the application

3   process and in its rejection of her individual application"); *Matarese v.*

4   *Archstone Pentagon City*, 795 F. Supp. 2d 402, 442-43 (E.D. Va. 2011), *vac'd*

5   *in part on other grounds by* 468 F. App'x 283 (4th Cir. 2012) (plaintiff's

6   efforts to renew her lease and request a reasonable accommodation constituted

7   protected activity); *cf. Hood v. Midwest Sav. Bank*, 95 F. App'x 768, 779 (6th

8   Cir. 2004) (plaintiff engaged in activity protected by § 3605 in exercising his

9   right to apply for a loan).  HUD similarly interprets § 3617 as prohibiting

10  interference with efforts to access "benefits provided . . . in connection with

11  the sale or rental of a dwelling" and "activities designed to make other persons

12  aware of, or encouraging such other persons to exercise, rights granted or

13  protected by this part."  24 C.F.R. § 100.400(c)(1), (4).

14          Legacy does not dispute that one purpose of Ms. Ling's visits to the

15  property was to inquire about her position on the affordable housing waitlist.

16  Legacy Mem. at 7.  Instead, it asserts without any evidentiary support at all

17  that Ms. Ling's activity was not protected because it "amounted to a campaign

18  of harassment and badgering of Legacy employees at NoHo 14."  *Id.*; *see also*

19  *id.* at 8 (asserting without support that Ms. Ling "harass[ed], interrogat[ed],

20  and badger[ed] . . . Legacy staff" and "literally 'staked out' the management

21  office").  Legacy does not cite to any record evidence to support these

22  accusations, which in any event are more relevant to the issue of Legacy's

23  asserted justification for calling the police, addressed *infra* Part III.B.

24          Indeed, the only "facts" submitted by Legacy that might even remotely

25  support its claim that Ms. Ling's conduct constituted harassment rather than

26  protected activity is inadmissible hearsay by Mr. Meredith.  Mr. Meredith

27  states generally that "employees at the property routinely *reported to me* that

28  they felt Ms. Ling's repeated appearances and questioning on subjects that had

1   already been addressed were intimidating" and that on one occasion while Mr.

2   Hunter was giving Ms. Ling and her companions a tour, Mr. Hunter "*told me*

3   he shortened the tour because the group did not honor his request to stop

4   recording him, and *he informed* me he felt uncomfortable because of that."

5   Meredith Decl. (Dkt. 150-3) ¶¶ 10, 12 (emphasis added).

6        These statements are inadmissible as evidence of what Mr. Meredith's

7   employees thought and felt, in other words for the truth of the matter asserted

8   by Mr. Meredith.  Fed. R. Evid. 801(c), 802.  These statements might be

9   admissible as evidence of Mr. Meredith's state of mind when he called the

10   police on the single occasion discussed in Paragraph 13 of his Declaration, *see*

11   Fed. R. Evid. 803(3)—an issue discussed in more detail *infra* Part III.B—but

12   they are not admissible as evidence of how the employees with whom Ms.

13   Ling interacted perceived her activity.  These statements by Mr. Meredith are

14   therefore inadequate to establish an absence of genuinely disputed facts.  *Cf.*

15   Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support . . . a

16   motion must . . . set out facts that would be admissible in evidence.").

17        Even if Legacy had produced admissible evidence to support its claim

18   that Ms. Ling was not pursuing her tenancy applications during these visits

19   and was therefore not engaged in protected activity, which it has not, Ms.

20   Ling's deposition testimony establishes disputed issues of fact on this issue.

21   *See* Ling Dep. 103:15-17, 104:1-5, 104:14-23, 105:2-6, 105:15-17 (describing

22   the purpose of her visits as being to view the unit configurations so that she

23   could evaluate potential modifications that might be necessary to make a unit

24   accessible in light of her specific needs, to inquire about the status of her

25   applications, and to convey her reasonable accommodation requests), 119:17-

26   22 (no one from her group became angry or spoke in loud voices).

27        Legacy does not dispute the second and third elements of Ms. Ling's

28   prima facie case: that it took an adverse action against her and that there was a

1  causal connection between her protected activity—visiting NoHo 14 for the

2  reasons discussed above—and its adverse action.  Nor could there be any

3  legitimate dispute as to these elements.

4        With respect to the second element (adverse action), Mr. Meredith's

5  decisions to call the police in order to have Ms. Ling and her companions

6  removed from the property, thus terminating their attempt to view accessible

7  units, were plainly adverse actions by Legacy.[6]  Addressing an analogous fact

8  pattern in *Marton v. Lazy Day Property Owners Association, Inc.*, No. 2:10-

9  cv-117, 2011 WL 1232375 (M.D. Fla. Mar. 30, 2011), the district court held

10  that the plaintiff stated a viable claim under § 3617 where she alleged that the

11  property owners' association threatened to call law enforcement if her

12  daughter continued to visit plaintiff on the premises.  *Id.* at *2, *5; *see also*

13  *Sofarelli v. Pinellas County*, 931 F.2d 718, 721-22 (11th Cir. 1991)

14  (neighbors' calling police supported § 3617 claim); *Neudecker v. Boisclair*

15  *Corp.*, 351 F.3d 361, 364 (8th Cir. 2003) (plaintiff stated valid claim under §

16  3617 where property manager threatened to evict her for making complaints);

17  *see also Walker*, 272 F.3d at 1129 (defining "interference" for purposes of §

18  3617 as "'the act of meddling in or hampering an activity or process'"

19  (quoting *Webster's Third New Int'l Dict.*, 1178 (14th ed. 1961))).[7]

20  _____

21  [6] Legacy assigned Mr. Meredith to be the property manager at NoHo 14.
   Meredith Decl. ¶¶ 2-3.  Legacy is therefore liable for actions that Mr. Meredith
   took in his capacity as property manager.  *See, e.g.*, *In re Wells Fargo*

22  *Residential Mortgage Lending Discrimination Litig.*, No. M:08-CV-1930,
   2010 WL 3037061, at *3 (N.D. Cal. July 30, 2010) ("'[T]raditional rules of

23  vicarious liability apply' to violations of [the] FHA."  (quoting *Holley v.
   Crank*, 400 F.3d 667, 670-74 (9th Cir. 2005)); *United States v. Habersham*

24  *Props., Inc.*, 319 F. Supp. 2d 1366, 1375 (N.D. Ga. 2003) (citing *Meyer v.
   Holley*, 537 U.S. 280 (2003)); *Boswell v. Gumbaytay*, No. 2:07-CV-135, 2009

25  WL 1515872, at *3-*4 (M.D. Ala. June 1, 2009); *Chew v. Hybl*, No. C96-
   03459, 1997 WL 33644581, at *13 (N.D. Cal. Dec. 9, 1997) (similar, under

26  FEHA); Cal. Civ. Code §§ 2295, 2330.

27  [7] The Ninth Circuit has rejected the argument that § 3617 "require[s] a
   showing of force or violence [to establish] coercion, interference, intimidation,

28  or threats."  *Walker*, 272 F.3d at 1128.

1    Nor is there any room for debate as to the third element—whether there

2    is a causal connection between Ms. Ling's protected activity and Legacy's

3    adverse action.  Legacy, acting through Mr. Meredith, called the police while

4    Ms. Ling was present at NoHo 14 in order to have her removed from the

5    premises.  The causal connection is direct and simultaneous with the protected

6    activity.  *Cf. Walker*, 272 F.3d at 1130 (finding evidence of a causal

7    connection where defendant commenced its adverse action approximately two

8    weeks after learning of plaintiff's protected activity).

9

**III.    Legacy Has Not Established the Absence of Any Disputed Facts**

10   **Regarding its Asserted Justification for Calling the Police.**

11   Because Ms. Ling's evidence is sufficient to establish a prima facie case

12   of retaliation, the inquiry then shifts to whether Legacy has proffered an

13   explanation for its challenged conduct and, if so, whether Ms. Ling has

14   presented evidence from which a reasonable jury could find that Legacy's

15   asserted explanation is pretextual.  *Walker*, 272 F.3d at 1128.

16   **A.    Legacy Asserts No Justification for the October 2009 Incident**

17   In the Third Amended Complaint, Ms. Ling alleges that Legacy called

18   the police to have her removed from the NoHo 14 premises on *two* occasions

19   in the fall of 2009.  Pl.'s Third Amended Compl. (Dkt. 141) ¶ 78.  During her

20   deposition she explained that these two incidents took place in October and

21   November 2009.  Ling Dep. at 113:7-9, 124:3-24; *see also* Ling Decl. ¶¶ 86,

22   90.

23   Legacy has not asserted any justification at all for the October 2009

24   incident when the police were called.  It therefore has not met its burden of

25   presenting evidence to rebut Ms. Ling's prima facie showing with respect to

26   that incident.  In his Declaration, Mr. Meredith discusses and purports to

27   justify one occasion when he called the police after Mr. Hunter reported that

28   he believed he was being videotaped and another employee reported that Ms.

1    Ling was blocking the entrance and exist to the property.  Meredith Decl. ¶¶

2    12-14.  Ms. Ling testified about the same incident and stated that it took place

3    in November 2009.  Ling Dep. 124:3-7.  Legacy is therefore silent as to the

4    first occasion, in October 2009, when it called the police to have Ms. Ling and

5    her companions removed from the NoHo 14 premises.  Ling Dep. 124:8-24;

6    Ling Decl. ¶¶ 87-89.  Summary judgment with respect to this incident must

7    therefore be denied because Legacy has not met its burden to assert a

8    legitimate justification, let alone to show the absence of any disputed facts

9    concerning such a justification.

10    **B.    A Reasonable Jury Could Conclude from the Record that Legacy's Asserted Justification for the November 2009 Incident Is Pretextual**

11

12    Legacy asserts that it called the police to have Ms. Ling removed from

13    the premises during her November 2009 visit to NoHo 14 because Mr.

14    Meredith was informed that "someone in [Ms. Ling's] group had videotaped

15    the tour given by Mr. Hunter and was told by another employee "that Ms. Ling

16    and her group had 'barricaded' the front door of the property, refusing to

17    leave, and refusing to let anyone else enter."  Meredith Decl. ¶ 12.  Mr.

18    Meredith states that he was "concerned that Ms. Ling and her group were

19    impeding the property's ability to conduct business" and that he "decided to

20    call the police to prevent Ms. Ling from further interrupting the business of the

21    property."  *Id.* ¶ 13.

22    Ms. Ling's deposition testimony places Mr. Meredith's statements

23    squarely in dispute.  First, Ms. Ling denies that anyone from her group was

24    recording Mr. Hunter in any way.  Ling Dep. 120:7-9, 121:3-6, 124:25-125:9;

25    Ling Decl. ¶ 92.  In contrast, Legacy has not presented any admissible

26    evidence from which a jury might conclude that Mr. Hunter was being

27    recorded.  Mr. Meredith's statements about what Mr. Hunter told Mr.

28    Meredith are classic hearsay and are inadmissible under Rule 802 of the

1    Federal Rules of Evidence.  *See* Meredith Decl. ¶ 12.  There is therefore no

2    admissible evidence from which a reasonable jury could find that Ms. Ling or

3    anyone from her group was recording Mr. Hunter, and Legacy has therefore

4    failed to demonstrate the absence of a genuine dispute.  *Cf.* Fed. R. Civ. P.

5    56(c)(4).

6         Not only does Mr. Meredith lack personal knowledge of the events he

7    discusses in Paragraph 12 of his Declaration, but Ms. Ling's testimony casts

8    substantial doubt on the legitimacy of Mr. Meredith's statement as to what he

9    believed—which according to his own testimony Mr. Meredith did not attempt

10   to verify by conversing with Ms. Ling or her companions or conducting any

11   investigation—thus calling into question the validity of Legacy's asserted

12   justification.

13        Second, and even more critically, there is conflicting evidence regarding

14   the circumstances of when and why Legacy called the police.  Ms. Ling

15   testified that after Mr. Hunter indicated to the group that the tour was being

16   terminated, she and Ms. Soto took an elevator from an upper floor to the

17   lobby, and that when they reached the lobby, two police officers were already

18   there.  Ling Dep. 115:20-25, 117:10-17; Ling Decl. ¶ 93.  Ms. Ling further

19   testified that no one from Legacy had asked her to leave the building before

20   she reached the lobby and saw the police officers.  Ling Dep. 117:10-17; Soto

21   Decl. ¶¶ 6-9.  This testimony directly disputes Mr. Meredith's statement that

22   he called the police *after* being informed that "Ms. Ling and her group had

23   'barricaded' the front door of the property, refusing to leave, and refusing to

24   let anyone else enter."  Meredith Decl. ¶¶ 12-13 (stating that he "decided to

25   call the police" after receiving this report).

26        Once again, Legacy has not produced any admissible evidence that Ms.

27   Ling or anyone from her group was blocking any entrance or exit to the NoHo

28   14 property or refused to leave the property when asked to do so.  Mr.

1   Meredith's statement that "another temporary employee . . . then *informed*
2   *me*" about the alleged barricade is pure hearsay and therefore fails the
3   requirements of Rule 56(c)(4) of the Federal Rules of Civil Procedure that
4   Legacy present "facts that would be admissible in evidence."  Mr. Meredith's
5   hearsay statement is not admissible to show that Ms. Ling or her companions
6   were "interrupting the business of the property" or refused to leave the
7   property when asked to do so.  Meredith Decl. ¶ 13.  The undisputed
8   *admissible* evidence shows that Ms. Ling and her companions were taking a
9   tour of the development with a leasing agent, on an upper floor, and they
10  returned to the lobby with the leasing agent when he told them that the tour
11  was over.  Ling Dep. 115:20-25, 117:10-17; Ling Decl. ¶ 93.  This evidence
12  likewise casts doubt on the truth of Mr. Meredith's purported understanding of
13  what was happening at the time.  He does not attest to having any personal
14  knowledge and did not attempt to verify his employee's report before calling
15  the police, facts from which a reasonable jury could find pretext.

16      In addition, Ms. Ling testified that she and her companions did not raise
17  their voices with any Legacy staff during this visit, Ling Dep. 119:17-22, and
18  Legacy has not presented any contrary admissible evidence.  Combined with
19  the fact that the three members of her group were in wheelchairs, a reasonable
20  jury could easily find that their presence was not intimating or threatening to
21  any of Legacy's able-bodied leasing staff .

22      In sum, a reasonable jury could easily credit Ms. Ling's testimony over
23  Mr. Meredith's (to the limited extent he is able to testify from personal
24  knowledge about events that he did personally observe or investigate).  The
25  record would therefore support a jury finding that Legacy's asserted
26  justification for calling the police during the November 2009 visit is pretextual
27  and that Legacy's real motivation was retaliatory, making summary judgment
28  on her retaliation claim improper.  *See Walker*, 272 F.3d at 1131.

1    To the extent that Legacy asserts that its conduct in calling the police to

2    have Ms. Ling removed from the NoHo 14 premises was authorized under

3    state property law, it does not develop this argument with supporting

4    authorities.  Moreover, any such unspecified and unsupported tenets of state

5    property law would not justify conduct intended to intimidate and interfere

6    with Ms. Ling's exercise of federally protected rights.  A defendant may not

7    defeat liability under the Fair Housing Act in reliance on conflicting state law.

8    *See* 42 U.S.C. § 3615 ("[A]ny law of a State, a political subdivision, or other

9    such jurisdiction that purports to require or permit any action that would be a

10   discriminatory housing practice under this subchapter shall to that extent be

11   invalid.").  The Fair Housing Act does not authorize managers or owners of

12   private property to restrict access to their properties for reasons that are

13   discriminatory or intended to interfere with the exercise of rights protected

14   under the Act.

15                              **CONCLUSION**

16   For the foregoing reasons, Ms. Ling respectfully requests that the Court

17   deny Legacy's Motion for Summary Judgment and that it allow her to present

18   her reasonable accommodation and retaliation claims against Legacy to the

19   jury.

20

21

22

23

24

25

26

27

28

1    Dated:  October 1, 2012

2    Respectfully submitted,

3    /s/ Jamie L. Crook
     Jamie L. Crook
4    on behalf of counsel for Plaintiff

5    Michael Allen (admitted to appear *pro hac vice*)
     *mallen@relmanlaw.com*
6    D. Scott Chang (SBN 146403)
     *schang@relmanlaw.com*
7    Jamie L. Crook (SBN 245757)
     *jcrook@relmanlaw.com*
8    **RELMAN, DANE & COLFAX PLLC**
     1225 19th Street, NW, Suite 600
9    Washington, DC 20036
     Telephone: (202) 728-1888
10   Facsimile: (202) 728-0848

11   Louis A. Rafti (SBN 243813)
     *LARafti.Law@gmail.com*
12   12209 Emelita Street
     North Hollywood, CA 91607
13   Telephone: (818) 392-0913

14   *Attorneys for Plaintiff*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**CERTIFICATE OF SERVICE**
**CENTRAL DISTRICT OF CALIFORNIA**

2

   I hereby certify that on this 1st day of October, 2012, I filed the
3  foregoing Plaintiff's Opposition to Legacy Partners Residential, Inc.'s Motion
   for Summary Judgment and accompanying documents using the Court's
4  CM/ECF filing system, which shall serve as notice of such filing on the
   following counsel of record:

5

6  Jennifer L. Derwin                         Donald S. Gottesman
   Mark A. Byrne                              David A. Bernardoni
7  BYRNE & NIXON LLP                          KULIK, GOTTESMAN & SIEGEL
   800 West Sixth Street, Suite 430           15303 Ventura Boulevard, Suite 1400
8  Los Angeles, CA 90017                      Sherman Oaks, CA 91403
   *jenniferderwin@byrnenixon.com*            *dgottesman@kgslaw.com*
9  *markbyrne@byrnenixon.com*                 *dbernardoni@kgslaw.com*

10 *Attorneys for Defendant the City of*      *Attorneys for Defendant*
   *Los Angeles*                              *Guardian/KW NoHo, LLC*

11 Melissa T. Daugherty                       Theresa L. Kitay
   Juliet Antoun                              KITAY LAW OFFICES
12 LEWIS BRISBOIS BISGAARD &                  578 Washington Boulevard, Suite 836
   SMITH LLP                                  Marina del Rey, CA 90292
13 221 North Figueroa Street, Suite 1200      *tkitay@kitaylaw.net*
   Los Angeles, CA 90012
14 *daugherty@lbbslaw.com*                     *Attorney for Defendants Redrock*
   *jantoun@lbbslaw.com*                       *NoHo Residential, LLC and Legacy*
15                                             *Partners Residential, Inc.*
   Karen A. Feld
16 LEWIS BRISBOIS BISGAARD &                  Tiffany P. Scarborough
   SMITH LLP                                  MURPHY, CAMPBELL, et al.
17 650 Hospitality Lane, Suite 600            8801 Folsom Boulevard, Suite 230
   Los Angeles, CA 92408                      Sacramento, CA 95826
18 *kfeld@lbbslaw.com*                         *tscarborough@murphycampbell.com*

19 *Attorneys for Defendant Community*         *Attorney for Defendant FPI*
   *Redevelopment Agency for the City of*      *Management, Inc.*
20 *Los Angeles*

21

22    I further certify that the foregoing will be served according to law on the
   following party, which has not entered its appearance and is in default:

23

   JSM Florentine
24 c/o Craig D. Jones
   111 N. Pass Avenue
25 Burbank, CA 91505

26                                            /s/ Miriam Becker-Cohen
                                              Miriam Becker-Cohen
27

28