1   Michael Allen (admitted to appear *pro hac vice*)
    *mallen@relmanlaw.com*
2   D. Scott Chang (SBN 146403)
    *schang@relmanlaw.com*
3   Jamie L. Crook (SBN 245757)
    *jcrook@relmanlaw.com*
4   **RELMAN, DANE & COLFAX PLLC**
    1225 19th Street, NW, Suite 600
5   Washington, DC 20036
    Telephone: 202-728-1888
6   Facsimile: 202-728-0848

7   Louis A. Rafti (SBN 243813)
    *LARafti.Law@gmail.com*
8   12209 Emelita Street
    North Hollywood, CA 91607
9   Telephone: (818) 392-0913

10   *Attorneys for Plaintiff*

11                   UNITED STATES DISTRICT COURT
12                   CENTRAL DISTRICT OF CALIFORNIA
                          (WESTERN DIVISION)
13

14     **MEI LING,**                          Case No. 2:11-cv-7774-SVW
15                          Plaintiff,         **PLAINTIFF'S MEMORANDUM OF
                                               LAW IN OPPOSITION TO THE
16            –– *v.*––                        CITY OF LOS ANGELES AND THE
                                               COMMUNITY REDEVELOPMENT
17                                             AGENCY OF THE CITY OF LOS
     **CITY OF LOS ANGELES,**                  ANGELES'S MOTIONS FOR
18   **CALIFORNIA; COMMUNITY**                 SUMMARY JUDGMENT
19   **REDEVELOPMENT AGENCY OF
     THE CITY OF LOS ANGELES;**                Hearing: October 22, 2012, 1:30 p.m.
20   Redrock NoHo Residential, LLC; JSM        Judge: Hon. Stephen V. Wilson
                                               Courtroom: Number 6, 2nd Floor
21   Florentine, LLC; Legacy Partners
     Residential, Inc.; FPI Management, Inc.;
22   and Guardian/KW NoHo, LLC,
23                          Defendants.
24

25

26

27

28

*Ling v. City of Los Angeles et al., Case No. 2:11-cv-7774-SVW*
Plaintiff's Memorandum of Law in Support of Opposition to the City of Los Angeles and the
Community Redevelopment Agency for the City of Los Angeles's Motions for Summary Judgment

1

# TABLE OF CONTENTS

2

TABLE OF AUTHORITIES ................................................................................iii

INTRODUCTION ........................................................................................... 1

STATEMENT OF RELEVANT FACTS.............................................................2

I.      MS. LING HAS A VIABLE CLAIM AGAINST THE CRA ..................4

II.     MS. LING'S CLAIMS AGAINST THE CRA AND CITY
        ARE NOT BARRED BECAUSE NOHO 14 DID NOT
        RECEIVE FEDERAL FUNDING ...................................................5

III.    VIOLATIONS OF HUD'S REGULATIONS ARE RELEVANT
        EVIDENCE IN DETERMINING WHETHER THE CITY AND
        CRA'S REDEVELOPMENT HOUSING PROGRAM IS
        ACCESSIBLE ............................................................................8

IV.     MS. LING'S CLAIMS ARE NOT TIME BARRED ...........................12

        A. Ms. Ling's Claims that the CRA and City's Redevelopment
           Housing Program Is Not Readily Accessible to Her Are A
           Continuing Violation.............................................................12

        B. Ms. Ling Attempted to Obtain a Benefit from the
           Redevelopment Housing Program Within the
           Statute of Limitations Period ................................................14

        C. There Are Genuine Issues of Material Fact Regarding
           Whether Defendants Permanently Denied Ms. Ling's
           Requests for Reasonable Accommodation ..............................14

V.      THE CRA HAD A DUTY TO ENSURE THAT ITS SUB-
        RECIPIENTS COMPLIED WITH §504 .........................................17

VI.     MS. LING ESTABLISHES THAT SHE WAS DENIED A
        BENEFIT SOLELY BECAUSE OF HER DISABILITY ......................19

        A. The CRA's Repeated Failure to Make Reasonable
           Accommodations Shows that the CRA Denied Ms. Ling
           Housing Soley Because of Her Disabilities .............................20

        B. Through Her Requests for Reasonable Accommodations, Ms.
           Ling Sought a Benefit Ordinarily Provided Through the CRA's
           Redevelopment Housing Program ..........................................21

VII.    THE HUD COMPLIANCE REPORT IS RELEVANT TO MS.
        LING'S CLAIMS ......................................................................23

- ii -
Ling v. City of Los Angeles *et al.*, Case No. 2:11-cv-7774-SVW
Plaintiff's Memorandum of Law in Support of Opposition to the City of Los Angeles and the
Community Redevelopment Agency for the City of Los Angeles's Motions for Summary Judgment

# TABLE AUTHORITIES

Cases

*Alexander v. Choate*, 469 U.S. 287 (1985)........................................................13, 20

*American Council for the Blind v. Paulson*, 525 F.3d 1256
(D.C. Cir. 2008)..............................................................................20, 21, 23

*Borkowski v. Valley Cent. Sch. Dist.*, 63 F.3d 131 (2d Cir. 1995) .........................20

*Cherosky v. Henderson*, 330 F.3d 1243 (9th Cir. 2003).........................................14

*Cherry v. City Coll. of S.F.*, No. C04-4981 WHA, 2005 WL 2620560
(N.D. Cal. Oct. 14, 2005) ...........................................................................10-11

*Collateral Control Corp. v. Deal (In re Covington Grain Co., Inc.)*,
638 F.2d 1362 (5th Cir. 1981) .........................................................................5

*Crowder v. Kitagawa*, 81 F.3d 1480 (9th Cir. 1996) ...............................................6

*Eames v. S. Univ. and Agric. and Mech. Coll.*, No. 09-56-JJB,
2009 WL 3379070 (M.D. La. Oct. 16, 2009) .................................................13

*Emma C. v. Eastin*, 985 F. Supp. 940 (N.D. Cal. 1997)..........................................18

*Henrietta D. v. Bloomberg*, 331 F.3d 261 (2d Cir. 2003) ...........................11, 18-19

*Huezo v. L.A. Cmty. Coll.*, No. CV 04-9772 MMM (JWJx),
2007 WL 7289347 (C.D. Cal. Feb. 27, 2007)....................................8, 10, 11

*Humphrey v. Mem'l Hosp. Ass'n*, 239 F.3d 1128 (9th Cir. 2001) ...................20-21

*In re Bernal*, 207 F.3d 595 (9th Cir. 2000)..............................................................5

*Jose P. v. Ambach*, 669 F.2d 865 (2d Cir. 1982).....................................................18

*Knox v. Davis*, 260 F.3d 1009 (9th Cir. 2001) .......................................................15

*Koslow v. Commonwealth of Pennsylvania*, 302 F.3d 161
(3d Cir. 2002) ...................................................................................................6

*Leland v. City and Cnty. of S.F.*, 576 F. Supp. 2d 1079
(N.D. Cal. 2008) ..........................................................................................15-16

*Lovell v. Chandler*, 303 F.3d 1039 (9th Cir. 2002) ................................................6-7

*Mark H. v. Lemahieu*, 513 F.3d 922 (9th Cir. 2008).................................................6

*McPherson v. Mich. High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453
(6th Cir. 1997) ................................................................................................20

*Mosier v. Kentucky*, 675 F. Supp. 2d 693 (E.D. Ky. 2009)....................................13

*Nazir v. United Airlines, Inc.*, 178 Cal. App. 4th 243 (Ct. App. 2009)..............15-16

Ling v. City of Los Angeles et al., Case No. 2:11-cv-7774-SVW
Plaintiff's Memorandum of Law in Support of Opposition to the City of Los Angeles and the
Community Redevelopment Agency for the City of Los Angeles's Motions for Summary Judgment

*Peters v. Bd. of Trustees of Vista Unified Sch. Dist.*, 457 F. App'x 612
    (9th Cir. 2011) ......................................................................................... 14

*Pierce v. County of Orange*, 526 F.3d 1190 (9th Cir. 2008) ..................... 7, 8, 12-13

*Putnam v. Oakland Unified Sch. Dist.*, No. C-93-3772-CW,
    1995 WL 873734 (N.D. Cal. June 9, 1995) ..................................... 8

*Rodriguez v. City of New York*, 197 F.3d 611 (2d Cir. 1999) ................................. 22

*Schonfeld v. City of Carlbad*, 978 F. Supp. 1329 (S.D. Cal. 1997) ........................ 13

*Smith v. Barton*, 914 F.2d 1330 (9th Cir. 1990) ............................................. 6-7

*Taylor v. The Hous. Auth. of New Haven*, 267 F.R.D. 36
    (D. Conn. 2010) ..................................................................................... 10

*Telesca v. Long Island Hous. P'ship, Inc.*, 443 F. Supp. 2d 397
    (E.D.N.Y. 2006) ............................................................................... 10, 11

*Tobin v. Liberty Mut. Ins. Co.*, 553 F.3d 121 (1st Cir. 2009) ................................. 14

*United States Dep't of Transp. v. Paralyzed Veterans of Am.*,
    477 U.S. 597 (1986) ............................................................................... 18

Statutes

24 C.F.R. § 8.3 ....................................................................................... 19

24 C.F.R. § 8.4(b)(1)(v) ........................................................................... 9

24 C.F.R. § 8.4(b)(4)(i) ........................................................................... 9

24 C.F.R.§ 8.22 ....................................................................... 9, 10, 11, 12

24 C.F.R. § 8.24 ............................................................................ 7, 8, 12

24 C.F.R. § 8.26 ....................................................................... 10, 12

24 C.F.R. § 8.27 ....................................................................... 9-10, 11, 12

28 C.F.R. § 41.3(d) ................................................................................. 19

28 C.F.R. Pt. 35, App. A. (2002) ............................................................ 19

29 U.S.C. § 794 .............................................................................. 6, 7, 18

California Health & Safety Code § 34173(b) ............................................. 4-5

Title II of the ADA ........................................................................... *passim*

Rules

Fed. R. Civ. P. 25(c) ............................................................................... 5

- iv -
Ling v. City of Los Angeles *et al.*, Case No. 2:11-cv-7774-SVW
Plaintiff's Memorandum of Law in Support of Opposition to the City of Los Angeles and the
Community Redevelopment Agency for the City of Los Angeles's Motions for Summary Judgment

1

Fed. R. Evid. 401 ................................................................................. 24

2

Other Authorities

3

7C CHARLES ALAN WRIGHT ET AL, FEDERAL PRACTICE & PROCEDURE
     § 1958 (2d ed. 1986) ........................................................................ 5

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Ling v. City of Los Angeles et al., Case No. 2:11-cv-7774-SVW
Plaintiff's Memorandum of Law in Support of Opposition to the City of Los Angeles and the
Community Redevelopment Agency for the City of Los Angeles's Motions for Summary Judgment

# INTRODUCTION

For more than six years, Plaintiff Mei Ling, a formerly homeless woman with a disability who uses a wheelchair and now lives in an inaccessible apartment, has sought to rent an accessible, affordable apartment in the Redevelopment Housing Program operated by Defendant Community Redevelopment Agency of the City of Los Angeles ("CRA") and the City of Los Angeles ("City"), which is principally supported by federal and state funds.

Defendants have moved for summary judgment or summary adjudication on Ms. Ling's claim that the CRA and City's Redevelopment Housing Program is not meaningfully accessible to her.  The CRA and City's bases for their motions for summary judgment or summary adjudication are groundless.

First, the CRA argues that Ms. Ling does not have a claim against it because it is a dissolved redevelopment agency.  To the contrary, Ms. Ling may properly continue her action against the CRA even though its rights and obligations have been transferred to the successor agency known as CRA/LA. Second, Defendants contend that Ms. Ling's claims under § 504 against them are barred because an apartment complex in the Redevelopment Housing Program did not receive federal funds.  However, there is no requirement that each facility within the Redevelopment Housing Program receive federal financial assistance for recipients such as Defendants to be liable for failure to provide program access.  Third, Defendants incorrectly contend that Ms. Ling cannot privately enforce HUD's regulations.  But Ms. Ling does not seek to privately enforce HUD regulations.  Instead, Ms. Ling seeks to use Defendants' violations of HUD's regulations as evidence of the lack of meaningful program access.   Fourth, Defendants mistakenly contend that Ms. Ling's claims are time barred. The Defendants' failure to provide program

- 1 -
Ling v. City of Los Angeles *et al.*, Case No. 2:11-cv-7774-SVW
Plaintiff's Memorandum of Law in Support of Opposition to the City of Los Angeles and the
Community Redevelopment Agency for the City of Los Angeles's Motions for Summary Judgment

1   access, however, is a continuing violation.   Fifth, the CRA wrongly argues

2   that it attempted to monitor its sub-recipients.  As outlined below, federal law

3   provides that CRA must ensure that its sub-recipients comply with § 504;

4   mere attempts to monitor are insufficient.   Sixth, the CRA mistakenly argues

5   that Ms. Ling has not established that she was denied a benefit solely because

6   of her disability.  But through her reasonable accommodation requests, Ms.

7   Ling sought access to the same benefit provided to other persons without

8   disabilities and the CRA's failure or refusal to grant her requests for

9   accommodation provides the link between her disability and the denial of

10  housing.

11              **STATEMENT OF RELEVANT FACTS**

12          Plaintiff Mei Ling lives in North Hollywood, in Los Angeles,

13  California.  Decl. of Mei Ling in Supp. of Opp. To Mot. for  Summ. J.  (Ling

14  Decl.) ¶ 18.  She uses a wheelchair.  *Id.* ¶ 6.  Ms. Ling requires a dwelling unit

15  that is both wheelchair-accessible and affordable on her limited income.  *Id.* ¶¶

16  8 & 10.   Because of her mobility impairment, she requires assistance with

17  personal care.  *Id.* ¶ 7.

18          Ms. Ling became homeless in about May 2006.  *Id.* ¶ 11.  Since that

19  time, she has sought to obtain affordable, wheelchair-accessible housing in the

20  Redevelopment Housing Program.  *Id.* ¶¶ 16, 26 & 82.  Her attempts to obtain

21  housing included applications, inquiries regarding her status on the waiting

22  list, and requests for reasonable accommodation made to the CRA and the

23  owners and managers of two properties financed by CRA: The Lofts and

24  NoHo 14.  *Id.* ¶¶ 26-82.

25          For example, on September 14, 2007, Ms. Ling made a written request

26  to the CRA's Don Spivak that The Lofts make a reasonable accommodation

27  and make an exception to the manner in which it assigns persons to accessible,

28  affordable units and assign persons with disabilities requiring accessible

- 2 -
Ling v. City of Los Angeles *et al.*, Case No. 2:11-cv-7774-SVW
Plaintiff's Memorandum of Law in Support of Opposition to the City of Los Angeles and the
Community Redevelopment Agency for the City of Los Angeles's Motions for Summary Judgment

1   features to the accessible, affordable units at The Lofts.  *Id.* ¶ 33.

2        On August 7, 2008, Ms. Ling made a request that The Lofts make an

3   exception to the manner in which it assigns persons to accessible, affordable

4   units and assign persons with disabilities requiring accessible features to the

5   accessible, affordable units at The Lofts.  *Id.* ¶ 46.   The request was made to

6   Dalila Sotelo of CRA.  *Id.*

7        Similarly, for instance, on February 18, 2012, Ms. Ling made an oral

8   request to Athena Tsiatos that NoHo 14 make an exception to the manner in

9   which it assigns persons to accessible, affordable units and assign persons with

10   disabilities requiring accessible features, including her, to the accessible,

11   affordable units at NoHo 14.  *Id.* ¶ 83.

12        In response to her attempts to obtain housing in the Redevelopment

13   Housing Program, Ms. Ling was informed at various times that she would be

14   first on the waitlist for an affordable housing unit at either The Lofts or NoHo

15   14, she would be given priority status for an affordable housing unit, or that

16   various public officials were working on obtaining housing for her.  *Id.* ¶¶ 27,

17   37, 41, 43, 50, 52, 53, 55, 58, 59 & 77.

18        For instance, in April 2008, Thomas Meredith, a manager of NoHo 14,

19   told Ms. Ling that he would offer her a place at top of the waitlist for a two-

20   bedroom unit at NoHo 14.  *Id.* ¶ 33.

21        On June 1, 2009, Ms. Ling received an email from Mr. Brady

22   confirming that she would be given priority status once NoHo14 began renting

23   its affordable housing units.  *Id*. ¶ 59.

24        On behalf of the CRA, Edwin Gipson sent an e-mail to Natalie Lozon of

25   NoHo 14 on December 27, 2010, which instructed Ms. Lozon that the owner

26   and management of NoHo14 "are required to follow all fair housing and

27   accessible housing laws, but as long as you are in compliance with the various

28

- 3 -
Ling v. City of Los Angeles *et al.*, Case No. 2:11-cv-7774-SVW
Plaintiff's Memorandum of Law in Support of Opposition to the City of Los Angeles and the
Community Redevelopment Agency for the City of Los Angeles's Motions for Summary Judgment

1    laws, it is acceptable to CRA/LA if you want to prioritize people with

2    disabilities to your accessible units." *Id*. ¶ 77.

3         From 2007 to the present, Ms. Ling has been either homeless or living

4    in housing that is inaccessible to her and has been desperate for affordable,

5    accessible housing.  *Id*. ¶ 28.  She made attempts to obtain housing in the

6    Redevelopment Housing Program through a number of  officials at the CRA

7    and City of Los Angeles and many representatives of the owners and

8    managers at The Lofts and NoHo 14.  *Id*.  Throughout this period of time, Ms.

9    Ling's circumstances changed and she made different reasonable

10   accommodation requests to different persons.  *Id*.  Because at various times

11   during this period she was told either that public officials were working on

12   obtaining housing for her, that she would be given priority status for an

13   affordable housing unit, or that she would be placed number one on the

14   waitlist for an affordable housing unit, Ms. Ling never believed that she had

15   been permanently denied housing at the CRA and City's Redevelopment

16   Housing Program at The Lofts and NoHo 14 or that any future attempts to

17   obtain housing would be futile.  *Id*.  She therefore continued to make attempts,

18   up to the present day, to obtain housing in the Redevelopment Housing

19   Program at The Lofts and NoHo 14.  *Id.*

20   **I.    MS. LING HAS A VIABLE CLAIM AGAINST THE CRA**

21        Ms. Ling filed her action against the Community Redevelopment

22   Agency of the City of Los Angeles ("CRA"), among other defendants, before

23   redevelopment agencies in California were abolished by statute.  CRA/LA, the

24   designated local authority and successor to the CRA, incorrectly contends that

25   Ms. Ling does not have a claim against the CRA because it is a dissolved

26   agency.  Under Rule 25 of the Federal Rules of Civil Procedure, Ms. Ling's

27   action may properly be continued against the CRA.

28        California Health & Safety Code § 34173(b) transferred all rights and

- 4 -
Ling v. City of Los Angeles *et al.*, Case No. 2:11-cv-7774-SVW
Plaintiff's Memorandum of Law in Support of Opposition to the City of Los Angeles and the
Community Redevelopment Agency for the City of Los Angeles's Motions for Summary Judgment

1   obligations of the former CRA to its successor organization, CRA/LA.

2   Section 34173(b) states that "all authority, rights, powers, duties, and

3   obligations previously vested with the former redevelopment agencies, under

4   the Community Redevelopment Law, are hereby vested in the successor

5   agencies." *Id.*

6         Rule 25 of the Federal Rules of Civil Procedure specifically allows Ms.

7   Ling to continue her action against the CRA.   Rule 25 states that "[i]f an

8   interest is transferred, the action may be continued by or against the original

9   party unless the court, on motion, orders the transferee to be substituted in the

10  action or joined with the original party."  Fed. R. Civ. P. 25(c).

11        As the Ninth Circuit has explained, Rule 25(c) "'is designed to allow

12  the action to continue unabated when an interest in the lawsuit changes hand.'"

13  *In re Bernal*, 207 F.3d 595, 598 (9th Cir. 2000) (quoting *Collateral Control*

14  *Corp. v. Deal* (*In re Covington Grain Co., Inc*.), 638 F.2d 1362, 1364 (5th Cir.

15  1981)).  Rule 25(c) "does not require that anything be done after an interest

16  has been transferred.  The action may be continued by or against the original

17  party, and the judgment will be binding on his successor in interest even if he

18  is not named."  *In re Bernal*, 207 F.3d at 598 (quoting 7C CHARLES ALAN

19  WRIGHT ET AL, FEDERAL PRACTICE & PROCEDURE § 1958 (2d ed. 1986)).

20        In this case, CRA's rights and obligations were transferred to its

21  successor, CRA/LA, by operation of law.  *See* Cal. Health & Safety Code §

22  34173(b); CRA Stmt. of Undisputed Facts No. 5.  Under Rule 25, Ms. Ling

23  may properly continue her action against CRA and any judgment will be

24  binding against CRA/LA.

25  **II.    MS. LING'S CLAIMS AGAINST THE CRA AND CITY ARE**
        **NOT BARRED BECAUSE NOHO 14 DID NOT RECEIVE**
26      **FEDERAL FUNDING**

27       Ms. Ling's claims under § 504 of the Rehabilitation Act against the

28  CRA and City for failure to make the Redevelopment Housing Program

- 5 -
Ling v. City of Los Angeles *et al.*, Case No. 2:11-cv-7774-SVW
Plaintiff's Memorandum of Law in Support of Opposition to the City of Los Angeles and the
Community Redevelopment Agency for the City of Los Angeles's Motions for Summary Judgment

1    accessible are not barred because NoHo 14 did not receive federal funding.

2         All entities receiving federal financial assistance must comply with the

3    anti-discrimination provisions of § 504, which provides that "[n]o otherwise

4    qualified individual with a disability . . . shall, solely by reason of her or his

5    disability, be excluded from the participation in, be denied the benefits of, or

6    be subjected to discrimination under any program or activity receiving Federal

7    financial assistance . . ." 29 U.S.C. § 794.  The Ninth Circuit has recognized

8    that "the focus of the prohibition in § 504 is 'whether disabled persons were

9    denied "meaningful access."'"  *Mark H. v. Lemahieu*, 513 F.3d 922, 937 (9th

10   Cir. 2008) (quoting *Crowder v. Kitagawa*, 81 F.3d 1480,1484 (9th Cir. 1996).

11        As recipients of millions of dollars in HUD funds each year, the CRA

12   and City are required, by operation of law, to comply with the Rehabilitation

13   Act and HUD's implementing regulations, because Congress has exercised its

14   authority under the Spending Clause to establish that obligation on recipients

15   of federal funds.  *See Lovell v. Chandler*, 303 F.3d 1039, 1051 (9th Cir. 2002)

16   (holding that the Rehabilitation Act represents a valid exercise of Congress's

17   spending power, and that "Congress has a strong interest in ensuring that

18   federal funds are not used in a discriminatory manner and in holding states

19   responsible when they violate funding conditions."); *Koslow v.*

20   *Commonwealth of Pennsylvania*, 302 F.3d 161, 175-76 (3d Cir. 2002)

21   ("Through the Rehabilitation Act, Congress has expressed a clear interest in

22   eliminating disability-based discrimination in state departments or agencies.

23   That interest, which is undeniably significant and clearly reflected in the

24   legislative history, flows with every dollar spent by a department or agency

25   receiving federal funds.") (citation omitted).

26        In this case, Ms. Ling contends that the CRA and City's Redevelopment

27   Housing Program at The Lofts and NoHo 14 is not meaningfully or readily

28   accessible to her.  To establish a violation of § 504 of the Rehabilitation Act, a

- 6 -
Ling v. City of Los Angeles *et al.*, Case No. 2:11-cv-7774-SVW
Plaintiff's Memorandum of Law in Support of Opposition to the City of Los Angeles and the
Community Redevelopment Agency for the City of Los Angeles's Motions for Summary Judgment

1    plaintiff must show that (1) she is disabled within the meaning of the

2    Rehabilitation Act; (2) she is otherwise qualified for the benefit or service; (3)

3    she was denied the benefit or service solely by reason of her handicap; and (4)

4    the program providing the benefit or service receives federal financial

5    assistance.  *Lovell*, 303 F.3d at 1052; *Smith v. Barton*, 914 F.2d 1330, 1338

6    (9th Cir. 1990).  "Program" is defined under § 504 as "all the operations of a

7    department, agency . . . or other instrumentality of a State or local

8    government."  29 U.S.C. § 794(b)(1)(A).

9          HUD's program accessibility regulation for existing housing provides

10   that "[a] recipient shall operate each existing housing program or activity

11   receiving Federal financial assistance so that the program or activity, when

12   viewed in its entirety, is readily accessible to and usable by individuals with

13   handicaps."  24 C.F.R. § 8.24(a); *see Pierce v. County of Orange*, 526 F.3d

14   1190, 1215 (9th Cir. 2008) (interpreting Title II of the ADA).  The program

15   accessibility requirements do not necessarily require that a housing program

16   make all of its existing housing programs usable and accessible.  24 C.F.R. §

17   8.24(a)(1); *see Pierce*, 526 F.3d at 1215.  Instead, a recipient may comply with

18   the program access requirements through such means as "reassignment of

19   services to accessible buildings, assignment of aides to beneficiaries, provision

20   of housing or related services at alternate accessible sites, alteration of existing

21   facilities and construction of new facilities, or any other methods that result in

22   making its programs or activities readily accessible to and usable by

23   individuals with handicaps."  24 C.F.R. § 8.24(b); *see Pierce*, 526 F.3d at

24   1215.

25         To establish that the CRA and the City's Redevelopment Housing

26   Program is not readily accessible, Ms. Ling's evidence will include but is not

27   limited to:  the Defendants' failures to make reasonable accommodations, the

28   Defendants' failures to make common areas and units The Lofts and NoHo 14

- 7 -
Ling v. City of Los Angeles *et al.*, Case No. 2:11-cv-7774-SVW
Plaintiff's Memorandum of Law in Support of Opposition to the City of Los Angeles and the
Community Redevelopment Agency for the City of Los Angeles's Motions for Summary Judgment

1   physically accessible, and the CRA and City's failure to monitor the owners

2   and managers' of The Lofts and NoHo 14's compliance with § 504.

3        The CRA and City contend that they cannot be liable under § 504 for

4   any acts or failures to act related to NoHo 14 because they never allocated any

5   federal financial assistance to NoHo 14.  The CRA and the City fundamentally

6   misconstrue the requirements for a program access claim under § 504.  There

7   is no requirement that each facility within the Redevelopment Housing

8   Program receive federal financial assistance for a recipient to be liable for

9   failure to provide program access. *See Huezo v. L.A. Cmty. Coll.*, No. CV 04-

10  9772 MMM (JWJx), 2007 WL 7289347 (C.D. Cal. Feb. 27, 2007) (granting

11  partial summary judgment to plaintiffs and noting that a community college

12  district, not the individual college in question, conceded that it received federal

13  financial assistance); *Putnam v. Oakland Unified Sch. Dist.*, No. C-93-3772-

14  CW, 1995 WL 873734 (N.D. Cal. June 9, 1995) (noting that the school

15  district, not the individual schools in question, did not contest that it received

16  federal financial assistance).  The CRA and the City receive federal financial

17  assistance from HUD (CRA's Stmt. of Undisputed Fact No.1 & Ex. A),

18  therefore the CRA and the City must comply with the program access

19  requirements of § 504 in the operation of their Redevelopment Housing

20  Program.  *See* 24 C.F.R. § 8.24; *Pierce,* 526 F.2d at 1215.

21

22  **III.    VIOLATIONS OF HUD'S REGULATIONS ARE RELEVANT
         EVIDENCE IN DETERMINING WHETHER THE CITY AND
23       CRA'S REDEVELOPMENT HOUSING PROGRAM IS
         ACCESSIBLE**

24        Violations of HUD's regulations interpreting § 504 can be used as

25  evidence in construing the CRA and City's obligations under the

26  Rehabilitation Act and interpreting substantive violations of § 504.  In their

27  motions for summary judgment, the CRA and City argue that HUD's

28  regulations cannot be privately enforced.  Ms. Ling does not seek to privately

- 8 -
*Ling v. City of Los Angeles et al.*, Case No. 2:11-cv-7774-SVW
Plaintiff's Memorandum of Law in Support of Opposition to the City of Los Angeles and the
Community Redevelopment Agency for the City of Los Angeles's Motions for Summary Judgment

1   enforce HUD's regulations but instead seeks to use the CRA and City's

2   violations of the regulations as evidence that the CRA and City have violated

3   the § 504 statute itself by failing to ensure that their Redevelopment Housing

4   Program provides meaningful access to people with disabilities.

5        HUD's regulations prohibit the City, "directly or through contractual,

6   licensing, or other arrangements," from discriminating in violation of the

7   Rehabilitation Act and prohibit it from perpetuating the discrimination of

8   another by aiding or perpetuating discrimination by providing significant

9   assistance to another entity that in turn discriminates or otherwise limiting a

10  person with a disability's enjoyment of a right, privilege or opportunity

11  enjoyed by others.  *See* 24 C.F.R. § 8.4(b)(1)(v); 24 C.F.R. § 8.4 (b)(4)(i) ("In

12  any program or activity receiving Federal financial assistance from the

13  Department, a recipient may not, directly or through contractual or other

14  arrangements, utilize criteria or methods of administration the purpose or

15  effect of which would: (i) Subject qualified individuals with handicaps to

16  discrimination solely on the basis of handicap").

17       HUD § 504 regulations also describe specific architectural and other

18  requirements that apply to particular housing projects such as The Lofts that

19  receive federal financial assistance that originated with the City and was given

20  to the CRA to carry out the CRA and City's housing programs.  For example,

21  HUD defines one element of accessibility as requiring that five percent of the

22  total dwelling units in new multifamily housing projects receiving federal

23  financial assistance meet the requirements set forth in the Uniform Federal

24  Accessibility Standards ("UFAS") for accessibility for people with mobility

25  impairments, and that an additional two percent must be accessible per UFAS

26  requirements for people with hearing or vision impairments. 24 C.F.R.§

27  8.22(a) & (b).

28       Multifamily housing projects receiving federal financial assistance must

- 9 -
Ling v. City of Los Angeles *et al.*, Case No. 2:11-cv-7774-SVW
Plaintiff's Memorandum of Law in Support of Opposition to the City of Los Angeles and the
Community Redevelopment Agency for the City of Los Angeles's Motions for Summary Judgment

1    take steps to ensure that accessible dwelling units in those projects are

2    occupied by people who need the accessibility features of those units,

3    including offering available units first to people who need the accessibility

4    features and taking steps to ensure that advertising and other information

5    regarding the availability of accessible units reaches people with disabilities.

6    24 C.F.R. § 8.27.

7           Accessible units must also be distributed throughout housing projects

8    and sites to the maximum extent feasible and be available in a range of sizes

9    and amenities so that a person with a disability's choice of living arrangements

10   is comparable to that of others.  24 C.F.R. § 8.26.

11          Ms. Ling does not, as the CRA and City suggest, seek directly to

12   enforce the regulations found in §§ 8.22, 8.26 or 8.27.  Instead, Ms. Ling seeks

13   to use violations of these regulations as evidence that the CRA and City's

14   Redevelopment Housing Program fails to provide meaningful access to people

15   with disabilities.  *See* Third Am. Compl. ¶ 38 (noting that the regulations

16   regarding these specific requirements provide important guidance about what

17   steps may be necessary to ensure that people with physical disabilities have

18   meaningful access to a housing program).

19          District courts have consistently held that violations of regulations

20   implementing § 504 may be used as evidence to show that an entity has failed

21   to make its program accessible to people with disabilities, even when the

22   regulations themselves were not privately enforceable.  *Taylor v. The Hous.*

23   *Auth. of New Haven*, 267 F.R.D. 36, 47 (D. Conn. 2010); *Huezo*, 2007 WL

24   7289347, at *8; *Telesca v. Long Island Hous. P'ship, Inc.*, 443 F. Supp. 2d

25   397, 410 (E.D.N.Y. 2006);  *Cherry v. City Coll. of S.F.*, No. C04-4981 WHA,

26   2005 WL 2620560 (N.D. Cal. Oct. 14, 2005) (refusing to recognize a private

27   right of action under Title II of the ADA to enforce regulations requiring a

28   transition plan but noting that evidence of regulatory violations may be

- 10 -
Ling v. City of Los Angeles *et al.*, Case No. 2:11-cv-7774-SVW
Plaintiff's Memorandum of Law in Support of Opposition to the City of Los Angeles and the
Community Redevelopment Agency for the City of Los Angeles's Motions for Summary Judgment

1    relevant to proving plaintiffs' claims of discrimination).

2         For example, in *Telesca*, a person with a disability entered a lottery for

3    an affordable homeownership unit from an affordable housing developer that

4    received federal funds.  443 F. Supp. 2d at 399-400.  The plaintiff was notified

5    that she was selected to purchase a unit but the unit was inaccessible.  *Id.*  She

6    requested various reasonable accommodations but the home was eventually

7    offered to another applicant.  *Id*. at 400-01.  The plaintiff brought suit against

8    the affordable housing developer, as well as the state and local agencies that

9    provided federal funding to the project, alleging that she was not provided

10   meaningful access to the affordable housing program.  *Id*. at 399.  Defendants

11   filed a motion to dismiss.  The district court held that the program access

12   regulations set forth in 24 C.F.R. §§ 8.22 and 8.27 do not apply to

13   homeownership projects.  *Id*. at 409.  However, the district court recognized

14   that "any of the HUD regulations implementing the Rehabilitation Act may be

15   relevant to determining whether defendants are liable under Section 504, and

16   what remedies are available to address such violations."  *Id.* at 410 (citing

17   *Henrietta D. v. Bloomberg*, 331 F.3d 261, 280 (2d Cir. 2003).

18        Similarly, in *Huezo*, Judge Morrow found that the Los Angeles

19   community college district failed to comply with regulations under the

20   Rehabilitation Act and the ADA that required the defendant to evaluate its

21   programs, services and facilities and prepare a transition plan.  *Huezo*, 2007

22   WL 7289347, at *8.   In granting plaintiff's motion for partial summary

23   adjudication, the court explained that while the defendant's violation of the

24   regulations "does not necessarily prove that defendant's services, programs, or

25   activities are not accessible to qualified disabled persons (citation omitted), it

26   is evidence tending to show that [plaintiff] was discriminated against with

27   regard to defendant's services, programs or activities."  *Id*. (citing *Cherry*,

28   2005 WL 2620560, at *4).

- 11 -
Ling v. City of Los Angeles *et al.*, Case No. 2:11-cv-7774-SVW
Plaintiff's Memorandum of Law in Support of Opposition to the City of Los Angeles and the
Community Redevelopment Agency for the City of Los Angeles's Motions for Summary Judgment

1     In this case, Ms. Ling similarly does not seek to directly enforce the

2 HUD regulations setting forth architectural and other requirements at 24

3 C.F.R. §§ 8.22, 8.26 and 8.27.   The CRA and City's violations of these

4 regulations, however, is evidence tending to show that the CRA and City's

5 Redevelopment Housing Program is not accessible to people with disabilities

6 and that Ms. Ling was discriminated against with regard to Defendant's

7 housing program.

8     Thus, the court need not address whether HUD's regulations regarding

9 architectural and other requirements are privately enforceable.   Regardless of

10 whether the regulations are privately enforceable, violations of the regulations

11 are evidence tending to show that CRA and City's Redevelopment Housing

12 Program is not accessible to people with disabilities.

13 **IV.   MS. LING'S CLAIMS ARE NOT TIME BARRED**

14     **A.   Ms. Ling's Claims that the CRA and City's Redevelopment
           Housing Program Is Not Readily Accessible to Her Are A**
15        **Continuing Violation**

16     Ms. Ling's claim that the CRA and the City's Redevelopment Housing

17 Program is not accessible to her is not time barred.  Both the CRA and the

18 City argue that the statute of limitations on Ms. Ling's claims has expired.

19 The City incorrectly contends that Ms. Ling's claims are time barred because

20 both The Lofts and NoHo 14 permanently denied her requests for

21 accommodation.   The CRA wrongly contends that Ms. Ling's claims are

22 time-barred because the date of construction of The Lofts and NoHo 14 starts

23 the running of the limitations period.

24     The CRA and the City again misconstrue the nature of Ms. Ling's

25 claims against them.  Ms. Ling has not asserted "design and construction"

26 claims; rather, she contends that CRA and the City's Redevelopment Housing

27 Program at The Lofts and NoHo 14 is not readily or meaningfully accessible

28 to her.  24 C.F.R. § 8.24; *see Pierce*, 526 F.3d 1190, 1215 (9th Cir. 2008)

- 12 -
Ling v. City of Los Angeles *et al.*, Case No. 2:11-cv-7774-SVW
Plaintiff's Memorandum of Law in Support of Opposition to the City of Los Angeles and the
Community Redevelopment Agency for the City of Los Angeles's Motions for Summary Judgment

1    (interpreting Title II of the ADA).

2        The CRA and the City's failure to provide program access to Ms. Ling

3    to the Redevelopment Housing Program is a continuing violation. *See Mosier*

4    *v. Kentucky*, 675 F. Supp. 2d 693, 698 (E.D. Ky. 2009); *Eames v. S. Univ. and*

5    *Agric. and Mech. Coll.*, No. 09-56-JJB, 2009 WL 3379070 at *3 (M.D. La.

6    Oct. 16, 2009); *Schonfeld v. City of Carlbad*, 978 F. Supp. 1329, 1333 (S.D.

7    Cal. 1997) (noting that program access claims were continuing in nature).  As

8    "long as Plaintiff is denied meaningful access to Defendants' programs," the

9    violation of § 504 continues. *Mosier*, 675 F. Supp. 2d at 698; *Eames*, 2009

10   WL 3379070 at *3.   Governments continue to discriminate against people

11   with disabilities by providing programs that are not meaningfully accessible.

12   *See Eames*, 2009 WL 3379070 at *3.  "To find otherwise would destroy the

13   requirement that governments provide persons with disabilities 'meaningful

14   access'" to programs.   *Mosier*, 675 F. Supp. 2d at 698 (citing *Alexander v.*

15   *Choate*, 469 U.S. 287, 301 (1985); *Eames*, 2009 WL 3379070 at *3.

16       The CRA argues that the accrual of the statute of limitations should be

17   governed by the date that The Lofts and NoHo 14 were constructed.  In

18   *Eames*, the district court flatly rejected that argument.  2009 WL 3379070 at

19   *3.  As the district court in *Eames* explained, the issue in a program access

20   case is not whether "Defendants' construction or alteration created

21   inaccessible facilities, but rather whether the programs offered in those

22   facilities are accessible." *Id.*  "Because the facilities need not be accessible if

23   the programs themselves are accessible," Ms. Ling's claims did not accrue at

24   the time of construction. *See id.*

25       Ms. Ling's claims that the CRA and City failed to provide program

26   access to their Redevelopment Housing Program are not time barred.

27

28

- 13 -
Ling v. City of Los Angeles *et al.*, Case No. 2:11-cv-7774-SVW
Plaintiff's Memorandum of Law in Support of Opposition to the City of Los Angeles and the
Community Redevelopment Agency for the City of Los Angeles's Motions for Summary Judgment

**B.**   **Ms. Ling Attempted to Obtain a Benefit from the Redevelopment Housing Program Within the Statute of Limitations Period**

Even if Ms. Ling's program access claims were not a continuing violation, which they are, Ms. Ling attempted to obtain a benefit in the Redevelopment Housing Program through numerous requests for reasonable accommodations within the statute of limitations period.

"The pivotal question in assessing the statute of limitations issue is whether [Plaintiff] made a specific request for accommodation that was denied during the statutory periods. . . ." *Tobin v. Liberty Mut. Ins. Co.*, 553 F.3d 121, 133 (1st Cir. 2009).  Each time Ms. Ling renewed her requests for reasonable accommodation and that accommodation was denied, a discrete act of discrimination occurred, and that started a fresh limitations period.  *See id.* at 131-133; *Cherosky v. Henderson*, 330 F.3d 1243, 1248 (9th Cir. 2003).  The Ninth Circuit has not established conclusively whether Rehabilitation Act claims are subject to California's two-year statute of limitations for personal injury actions or a three-year statute of limitations for "liability created by statute." *Peters v. Bd. of Trustees of Vista Unified Sch. Dist.*, 457 F. App'x 612, 614 (9th Cir. 2011).  Assuming that the statute of limitations that applies to a § 504 claim is the two year personal injury limitations period, Ms. Ling made repeated requests for accommodation within the limitations period.  *See* Ling Decl. ¶¶ 60, 65-68, 76, 79-82.

**C.**   **There Are Genuine Issues of Material Fact Regarding Whether Defendants Permanently Denied Ms. Ling's Requests for Reasonable Accommodation**

Ms. Ling repeatedly made attempts to obtain a housing unit in the Redevelopment Housing Program since June 2007.  *Id.* ¶ 26.   Her attempts to obtain housing included applications, inquiries regarding her status on the waiting list, and requests for reasonable accommodation made to the CRA and the owners and managers of The Lofts and NoHo 14.  *Id.*

- 14 -
Ling v. City of Los Angeles *et al.*, Case No. 2:11-cv-7774-SVW
Plaintiff's Memorandum of Law in Support of Opposition to the City of Los Angeles and the
Community Redevelopment Agency for the City of Los Angeles's Motions for Summary Judgment

1   During this time period, in response to her attempts to obtain housing in

2   the Redevelopment Housing Program, Ms. Ling was informed at various times

3   that she would be first on the waitlist for an affordable housing unit at either

4   The Lofts or NoHo 14, that she would be given priority status for an

5   affordable housing unit, or that various public officials were working on

6   obtaining housing for her.  *Id*. ¶ 27.

7   The City, citing *Knox v. Davis*, 260 F.3d 1009, 1014 (9th Cir. 2001),

8   contends that Ms. Ling's reasonable accommodation requests were

9   permanently denied and that any new request for accommodation should be

10   barred.  *Knox,* however, is distinguishable from this case.  In *Knox*, the court

11   held that the § 1983 claim of a public defender was barred on statute of

12   limitations grounds because it accrued when  she was informed by letter that

13   her legal mail and visitation privileges with respect to all prisons and all

14   prisoners were terminated, and that the repeated denials of her subsequent

15   requests did not revive that claim.  *Id*.  The City argues that Ms. Ling's

16   requests were denied at The Lofts on October 17, 2007 when a letter was sent

17   to Ms. Ling informing her that Pantages units were not included as part of the

18   affordable housing program at The Lofts and that only the CRA could give her

19   application priority status.  *See* Exh. D to Decl. of Mark Byrne ("Byrne

20   Decl.") in Supp. of City's Mot. for Summ. J.  Similarly, the City contends that

21   Ms. Ling's reasonable accommodation claims at NoHo 14 accrued when she

22   learned that another tenant had been rented a unit that Ms. Ling had been

23   promised on November 2, 2007.

24   Triable issues of fact exist about whether the October 17, 2007 letter

25   sent to Ms. Ling or the renting of an apartment at NoHo 14 that Ms. Ling

26   wanted to rent has a degree of permanence necessary to start the running of the

27   statute of limitations on Ms. Ling's reasonable accommodation claims. *See*

28   *Leland v. City and Cnty. of S.F.*, 576 F. Supp. 2d 1079, 1096 (N.D. Cal. 2008)

- 15 -
Ling v. City of Los Angeles *et al.*, Case No. 2:11-cv-7774-SVW
Plaintiff's Memorandum of Law in Support of Opposition to the City of Los Angeles and the
Community Redevelopment Agency for the City of Los Angeles's Motions for Summary Judgment

1   (noting that plaintiff raised a triable issue of fact regarding whether the

2   conduct had acquired a degree of permanence); *Nazir v. United Airlines, Inc.*,

3   178 Cal. App. 4th 243, 270 ( 2009) (same).

4          Ms. Ling requested that The Lofts and NoHo 14 change the manner in

5   which they assigned affordable housing units and assign affordable, accessible

6   units to people with disabilities who could benefit from accessibility features

7   as a reasonable accommodation.  Ms. Ling also requested that The Lofts

8   assign her a Pantages unit, which was more accessible for her disabilities, in

9   place of the types of units offered under the affordable housing program at The

10  Lofts.

11         Neither the October 17, 2007 letter nor the renting of Unit 620 provided

12  notice to Ms. Ling that her requests for reasonable accommodation were

13  permanently denied.  The October 17, 2007 letter noted that only the CRA

14  could grant Ms. Ling a priority at The Lofts and that the Pantages units were

15  not part of units included in the affordable housing program under the owner

16  participation agreement.  *See* Ex. D to Byrne Decl.  The letter left open the

17  possibility that the CRA could have a role in granting the accommodations

18  that Ms. Ling sought and thus did not permanently deny her requested

19  accommodations.  Indeed, after the October 26, 2007 letter was sent by The

20  Lofts, CRA and City officials notified Ms. Ling that they were working on

21  trying to find her housing and that she would be given priority.  Ling Decl. ¶¶

22  43, 50, 52, 53, 58-59.

23         Similarly, the renting of *one* of the units at NoHo 14 in February 2009

24  that was accessible to her (*see* Ex. 12 to Ling Decl. at 3, Ex. 17 to Ling Decl.)

25  did not provide Ms. Ling with notice that her reasonable accommodation

26  requests were permanently denied.  After February 2009 when unit 620 was

27  rented, City officials told Ms. Ling that they were working on obtaining a unit

28  for her and that her application would be given priority.  *Id.* ¶¶ 58-59.

- 16 -
Ling v. City of Los Angeles *et al.*, Case No. 2:11-cv-7774-SVW
Plaintiff's Memorandum of Law in Support of Opposition to the City of Los Angeles and the
Community Redevelopment Agency for the City of Los Angeles's Motions for Summary Judgment

1    Furthermore, Ms. Ling made attempts to obtain housing in the

2  Redevelopment Housing Program through various officials at the CRA and

3  City of Los Angeles and multiple representatives of the owners and managers

4  at The Lofts and NoHo 14.  *Id.* ¶ 28.   Ms. Ling's circumstances changed and

5  she made reasonable accommodation requests to different persons.  *Id.*

6  Because at various times she was told that officials were working on obtaining

7  housing for her or that she would be given priority for a unit, Ms. Ling never

8  believed that she had been permanently denied housing in the CRA and City's

9  Redevelopment Housing Program at The Lofts and NoHo 14 or that any future

10  attempts to obtain housing would be futile.  *Id.*

11    Viewed in the light most favorable to Ms. Ling, a reasonable juror could

12  conclude that Ms. Ling believed that her efforts to obtain a unit in the

13  Redevelopment Housing Program might be successful and that she was not on

14  notice that her attempts to obtain housing in the Redevelopment Housing

15  Program were permanently denied.

16

17  **V.    THE CRA HAD A DUTY TO ENSURE THAT ITS SUB-
     RECIPIENTS COMPLIED WITH § 504**

18    The CRA had a responsibility to ensure that housing developments

19  within its Redevelopment Housing Program, such as The Lofts and NoHo 14,

20  complied with § 504.  The CRA's breaches of that duty are evidence tending

21  to show that the CRA's housing program is not meaningfully accessible to

22  people with disabilities.

23    In its motion for summary judgment, the CRA argues that it attempted

24  to monitor The Lofts' compliance with the physical accessibility requirements

25  of § 504 by sending out questionnaires to The Lofts and NoHo 14 requesting

26  information about accessibility.[1]  The CRA misinterprets its obligations under

27  _____

28  [1] Notably, the CRA does not submit evidence showing that either The Lofts or
     NoHo 14 is physically accessible to people with disabilities under the

    *(continued…)*

- 17 -
*Ling v. City of Los Angeles et al.*, Case No. 2:11-cv-7774-SVW
Plaintiff's Memorandum of Law in Support of Opposition to the City of Los Angeles and the
Community Redevelopment Agency for the City of Los Angeles's Motions for Summary Judgment

1 § 504.  The CRA's responsibilities under § 504 are not limited to monitoring

2 alone.  Instead, the CRA has a responsibility to ensure that its sub-recipients

3 comply with the requirements of § 504.

4      Federal courts have repeatedly interpreted the Rehabilitation Act to

5 impose a duty on a recipients of federal funds to ensure that its sub-recipients

6 comply with § 504.  *See Henrietta D.*, 331 F.3d at 284-287; *Jose P. v.*

7 *Ambach*, 669 F.2d 865, 871 (2d Cir. 1982); *Emma C. v. Eastin*, 985 F. Supp.

8 940, 948 (N.D. Cal. 1997).

9      For example, in *Henrietta D.*, the Second Circuit held that a recipient

10 (the State of New York) had a duty under § 504 to supervise sub-recipients,

11 such as New York City, in the delivery of federally-funded social services.

12 The court reasoned that the Spending Clause imposed supervisory liability

13 upon recipients of federal funds under § 504.  It explained that Spending

14 Clause legislation such as § 504 is interpreted under contract law principles

15 and that the common law of contracts strongly suggests that the primary

16 recipient of federal funds "is liable to ensure that localities comply with the

17 Rehabilitation Act in their delivery of federally-funded [] services."  *Id.* at 286.

18 The court held that under contract principles, "once a party has made a

19 promise, it is responsible to the obligee to ensure that performance will be

20 satisfactory, *even if the promising party obtains some third party to carry out*

21 *its promise*."  *Id.* (emphasis supplied).  The court found that in accepting

22 federal funds, the state as the primary recipient of federal social service funds

23 "promised that its programs will comply with the mandate of the

24 Rehabilitation Act."  *Id.* (citing 29 U.S.C. § 794 and *United States Dep't of*

25 *Transp. v. Paralyzed Veterans of Am.*, 477 U.S. 597, 605 (1986)).  The Second

26 _____

27 (...continued)
appropriate standard, the Uniform Federal Accessibility Standard (UFAS).

28 The Lofts does not meet UFAS.  *See* Ex. A & B to Pl. Req. for Jud. Not.

- 18 -
Ling v. City of Los Angeles *et al.*, Case No. 2:11-cv-7774-SVW
Plaintiff's Memorandum of Law in Support of Opposition to the City of Los Angeles and the
Community Redevelopment Agency for the City of Los Angeles's Motions for Summary Judgment

1  Circuit concluded that the state was "liable to guarantee that those it delegates

2  to carry out its programs satisfy the terms of its promised performance

3  including compliance with the Rehabilitation Act." *Henrietta D.*, 331 F.3d at

4  286.

5      The Second Circuit also held that the regulations implementing the

6  Rehabilitation Act strongly supported the view that a recipient may be held

7  responsible for the failure of its sub-recipients to comply with § 504.  *Id.*

8  Interpreting a regulation virtually identical in language to HUD's § 504

9  regulation at 24 C.F.R. § 8.3, the court found that "[t]he regulations define a

10  covered 'recipient' to include not only the State, but also any of its

11  'successor[s], assignee[s], or transferee[s].'" *Id.* (quoting 28 C.F.R. § 41.3(d)).

12  The court noted that the Department of Justice, in explaining a parallel ADA

13  regulation stated, "'*All governmental activities of public entities are covered,*

14  *even if they are carried out by contractors*.  For example, a State is obligated

15  by title II to ensure that the services, programs, and activities of a State park

16  inn operated under contract by a private entity are in compliance with title II's

17  requirements.'" *Henrietta D.*, 331 F.3d at 286 (quoting 28 C.F.R. Pt. 35, App.

18  A. (2002) at 517) (emphasis supplied).

19      CRA's obligation under § 504 is not limited to attempting to monitor

20  The Lofts and NoHo 14 for compliance with § 504.  The CRA had an

21  obligation to ensure that its sub-recipients comply with the substantive

22  requirements of § 504.

23

24  **VI.   MS. LING ESTABLISHES THAT SHE WAS DENIED A
          BENEFIT SOLELY BECAUSE OF HER DISABILITY**

25      Ms. Ling meets each of the elements of her prima facie case for a

26  violation of the reasonable accommodation provision of § 504.   In its motion

27  for summary judgment, the CRA wrongfully argues that Ms. Ling has not

28  established that she was denied a benefit solely because of her disability.

- 19 -
Ling v. City of Los Angeles *et al.*, Case No. 2:11-cv-7774-SVW
Plaintiff's Memorandum of Law in Support of Opposition to the City of Los Angeles and the
Community Redevelopment Agency for the City of Los Angeles's Motions for Summary Judgment

**A.     The CRA's Repeated Failure to Make Reasonable Accommodations Shows that the CRA Denied Ms. Ling Housing Solely Because of Her Disabilities**

The CRA argues that Ms. Ling has not shown a triable issue of fact regarding whether it denied her a benefit *solely* because of her disability.[2]  The requirement that a plaintiff must show that she was denied a benefit solely because of disability is not a requirement that Ms. Ling establish discriminatory intent.  *See American Council for the Blind v. Paulson*, 525 F.3d 1256, 1260 (D.C. Cir. 2008) (quoting *Alexander*, 469 U.S. at 295 ("The Supreme Court has instructed that section 504 does not require proof of discriminatory intent because '[d]iscrimination against the handicapped was perceived by Congress to be most often the product, not of invidious animus, but rather thoughtlessness and indifference – of benign neglect.")  Instead, a plaintiff may establish that disability was the sole factor where a defendant fails or refuses to to make a reasonable accommodation. *Humphrey v. Mem'l Hosp. Ass'n*, 239 F.3d 1128, 1140 (9th Cir. 2001); *McPherson v. Mich. High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453, 460 (6th Cir. 1997); *Borkowski v. Valley Cent. Sch. Dist.*, 63 F.3d 131, 143 (2d Cir. 1995).

The record in this case contains substantial evidence that Ms. Ling repeatedly made reasonable accommodation requests to the CRA and that the CRA failed or refused to grant her requests for reasonable accommodation. Ling Decl. ¶¶ 33, 42, 46, 51, 56 & 76.

Based on the summary judgment record in this case, a reasonable juror could conclude that the CRA denied Ms. Ling housing because of her

---

[2] In its motion for summary judgment, the CRA sets forth the allegations contained in Ms. Ling's complaint against the CRA for failing to make reasonable accommodations.  Ms. Ling specifically stated in the complaint that she was providing examples of her requests for reasonable accommodation directed at the CRA. As set forth more fully in Ms. Ling's declaration in support of her opposition, Ms. Ling made numerous requests for reasonable accommodation to the CRA with regard to both units at The Lofts and NoHo 14.

- 20 -
Ling v. City of Los Angeles *et al.*, Case No. 2:11-cv-7774-SVW
Plaintiff's Memorandum of Law in Support of Opposition to the City of Los Angeles and the
Community Redevelopment Agency for the City of Los Angeles's Motions for Summary Judgment

1   disability based on Ms. Ling's repeated requests for accommodation directed

2   to the CRA.  *See Humphrey,* 239 F.3d at 1140.

3        **B.     Through Her Requests for Reasonable Accommodations, Ms.**
                   **Ling Sought A Benefit Ordinarily Provided Through the**

4                   **CRA's Redevelopment Housing Program**

5       Next, the CRA, citing *American Council for the Blind*, 525 F.3d 1256,

6   contends that the benefit that Ms. Ling sought through her requests for

7   accommodation was not a benefit ordinarily provided by the CRA in its

8   Redevelopment Housing Program.  The reasoning of the D.C. Circuit in

9   *American Council for the Blind*, however, makes clear that Ms. Ling did not

10   seek a new or different benefit than the benefit provided to other people

11   without disabilities in the Redevelopment Housing Program.

12       In *American Council for the Blind*, the plaintiffs alleged that the

13   Treasury Department denied meaningful access to people with disabilities

14   with respect to its program for the production and design of currency by

15   designing and issuing paper money that is not readily distinguishable by

16   people with visual impairments.  In affirming partial summary judgment

17   entered in favor of the plaintiffs, the D.C. Circuit held that the visually

18   distinguishable paper money sought by the plaintiffs was not a new or

19   different benefit.  525 F.3d at 1269.  In reaching that conclusion, the D.C.

20   Circuit explained that:

21        Where the plaintiffs identify an obstacle that impedes their access
           to a government program or benefit, they likely have established

22        that they lack meaningful access to the program or benefit.  By
           contrast, where the plaintiff seeks to expand the substantive scope

23        of a program or benefit, they likely seek a fundamental alteration
           to an existing program or benefit and have not been denied

24        meaningful access.

25   *Id.* at 1267.

26       The D.C. Circuit noted that people with physical disabilities lack

27   meaningful access when buildings and mass transport do not provide

28   wheelchair access.  *Id*. at 1267-68 (citations omitted).  Similarly, deaf

Ling v. City of Los Angeles *et al.*, Case No. 2:11-cv-7774-SVW
Plaintiff's Memorandum of Law in Support of Opposition to the City of Los Angeles and the
Community Redevelopment Agency for the City of Los Angeles's Motions for Summary Judgment

1    individuals lack meaningful access to government activities or programs

2    without the provision of interpretative services.  *Id.*  The court held, however,

3    that "[S]ection 504 'does not mandate the provision of new benefits.'"  *Id.* at

4    1268 (quoting *Rodriguez v. City of New York*, 197 F.3d 611, 619 (2d Cir.

5    1999).

6        In concluding that the benefit sought – readily distinguishable paper

7    money – was not a new or different benefit, the court held that the plaintiffs

8    "seek[] only to remove an obstacle that the visually impaired confront in using

9    paper currency, and not . . . to obtain a substantively different benefit than is

10   already provided by the U.S. currency system."  *Id.* at 1268.

11        In this case, the benefit provided by the CRA in the Redevelopment

12   Housing Program is affordable housing.  Ms. Ling's reasonable

13   accommodation requests sought only to remove obstacles that people with

14   physical disabilities confront in seeking to obtain housing.  Ms. Ling needed

15   housing physically accessible to her to be able to be able to live in a unit in the

16   Redevelopment Housing Program.  The accommodations sought – changing

17   the method of assigning applicants to the affordable housing units and

18   assigning accessible units to people with physical disabilities and the inclusion

19   of the more accessible Pantages unit in the Redevelopment Housing Program

20   – would have provided Ms. Ling an equal opportunity to live at The Lofts and

21   NoHo 14.  People without physical disabilities do not need an accessible unit

22   to live at The Lofts or NoHo 14.  However, Ms. Ling and other people with

23   physical disabilities cannot live in the Redevelopment Housing Program

24   unless their units are physically accessible.  Ms. Ling did not seek a new or

25   different benefit not available to people without disabilities through the

26   Redevelopment Housing Program.

27        Ms. Ling identified an obstacle – the lack of physically accessible

28   housing – that impedes her access to housing in the CRA's Redevelopment

Ling v. City of Los Angeles *et al.*, Case No. 2:11-cv-7774-SVW
Plaintiff's Memorandum of Law in Support of Opposition to the City of Los Angeles and the
Community Redevelopment Agency for the City of Los Angeles's Motions for Summary Judgment

1  Housing Program and sought accommodations that would remove that

2  obstacle.  Ms. Ling has therefore likely established that she lacks meaningful

3  access to the program or benefit.  *See American Council for the Blind*, 525

4  F.3d at 1260.

5
6  **VII.   THE HUD COMPLIANCE REPORT IS RELEVANT TO MS.**
   **         LING'S CLAIMS**

7          Finally, the CRA appears to assert a relevancy objection to Ms. Ling's

8  use of the HUD's Letter of Non-Compliance issued to the City and the CRA.

9  The Letter of Non-Compliance is plainly relevant to Ms. Ling's claims.  Ms.

10  Ling claims that the CRA and City's Redevelopment Housing Program is not

11  meaningfully accessible to people with physical disabilities.  To establish her

12  claim that the Redevelopment Housing Program is not accessible, Ms. Ling's

13  evidence will include but is not limited to:  the Defendants' failures to make

14  reasonable accommodations, the Defendants' failures to make common areas

15  and units at The Lofts and NoHo 14 physically accessible, and the CRA and

16  City's failures to monitor the owners and managers' of The Lofts and NoHo

17  14's compliance with § 504.

18          HUD issued findings on each of these issues.  By letter of January 11,

19  2012, the HUD Office of Fair Housing and Equal Opportunity notified the

20  City and the CRA of the results of that compliance review, which found that

21  "the City and the CRA are not monitoring the policies and procedures of

22  federally-funded recipients in several key areas, and that the policies in place

23  are not implemented in a manner that ensures that these policies and practices

24  do not discriminate against qualified individuals with disabilities because of

25  their disability. . . . there is no monitoring of Section 504 compliance, and  . . .

26  an overall lack of knowledge as to the duties and responsibilities with respect

27  to Section 504."  HUD Letter of Findings of Noncompliance, January 11,

28  2012, attached as Ex. A to Pl. Req. for Judicial Notice, at 7.

- 23 -
Ling v. City of Los Angeles *et al.*, Case No. 2:11-cv-7774-SVW
Plaintiff's Memorandum of Law in Support of Opposition to the City of Los Angeles and the
Community Redevelopment Agency for the City of Los Angeles's Motions for Summary Judgment

1    HUD also "found that a large percentage of residents without

2  disabilities currently occupy the designated accessible units in several HUD-

3  funded developments," and that, with no oversight from the CRA, many

4  developments had offered accessible dwelling units to the general population

5  on a lottery or waitlist basis without regard to disability or need for

6  accessibility features. *Id.* at 8.  HUD concluded that accessible housing units

7  were not distributed throughout the projects and sites in a manner to provide

8  people with disabilities with a choice of living arrangements in certain

9  developments. *Id.* at 6.  Specifically, HUD found that accessible units were

10 not distributed among the affordable units at The Lofts and that The Lofts

11 conducted a single lottery that did not take into account individuals with

12 disabilities. *Id.* at 6, 8.

13   In addition, HUD determined that "CRA has failed to ensure that HUD-

14 funded developments implement comprehensive reasonable accommodation

15 policies for applicants, residents and members of the public." *Id.* at 9.

16   HUD's Letter of Findings tends to make it more probable that the CRA

17 and the City failed to monitor its sub-recipients, failed to ensure that

18 accessible units were assigned to people with physical disabilities, and failed

19 to ensure that housing developments developed reasonable accommodation

20 policies. *See* Fed. R. Evid. 401.  HUD's Letters of Findings are relevant to

21 Ms. Ling's claims.

22

23 Dated:  October 1, 2012

24                              Respectfully submitted,

25                              /s/ D. Scott Chang
                                D. Scott Chang
26                              on behalf of counsel for Plaintiff

27                              Michael Allen (admitted to appear *pro
                                hac vice*)
28                              *mallen@relmanlaw.com*

Ling v. City of Los Angeles *et al.*, Case No. 2:11-cv-7774-SVW
Plaintiff's Memorandum of Law in Support of Opposition to the City of Los Angeles and the
Community Redevelopment Agency for the City of Los Angeles's Motions for Summary Judgment

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

D. Scott Chang (SBN 146403)
*schang@relmanlaw.com*
Jamie L. Crook (SBN 245757)
*jcrook@relmanlaw.com*
**RELMAN, DANE & COLFAX PLLC**
1225 19th Street, NW, Suite 600
Washington, DC 20036
Telephone: (202) 728-1888
Facsimile: (202) 728-0848

Louis A. Rafti (SBN 243813)
*LARafti.Law@gmail.com*
12209 Emelita Street
North Hollywood, CA 91607
Telephone: (818) 392-0913

*Attorneys for Plaintiff*

- 25 -
Ling v. City of Los Angeles *et al.*, Case No. 2:11-cv-7774-SVW
Plaintiff's Memorandum of Law in Support of Opposition to the City of Los Angeles and the
Community Redevelopment Agency for the City of Los Angeles's Motions for Summary Judgment

1
### CERTIFICATE OF SERVICE
### CENTRAL DISTRICT OF CALIFORNIA
2
      I hereby certify that on this 1st day of October, 2012, I filed the
3
foregoing Plaintiff's Memorandum of Law in Opposition to the City of Los
Angeles and the Community Redevelopment Agency for the City of Los
4
Angeles's Motions for Summary Judgment using the Court's CM/ECF filing
system, which shall serve as notice of such filing on the following counsel of
5
record:

6
Jennifer L. Derwin              Donald S. Gottesman
Mark A. Byrne               David A. Bernardoni
7
BYRNE & NIXON LLP       KULIK, GOTTESMAN & SIEGEL
800 West Sixth Street, Suite 430   15303 Ventura Boulevard, Suite 1400
8
Los Angeles, CA 90017       Sherman Oaks, CA 91403
jenniferderwin@byrnenixon.com   dgottesman@kgslaw.com
9
markbyrne@byrnenixon.com     dbernardoni@kgslaw.com

10
*Attorneys for Defendant the City of*   *Attorneys for Defendant*
*Los Angeles*                 *Guardian/KW NoHo, LLC*
11
Melissa T. Daugherty       Theresa L. Kitay
12
Juliet Antoun              KITAY LAW OFFICES
LEWIS BRISBOIS BISGAARD &   578 Washington Boulevard, Suite 836
13
SMITH LLP               Marina del Rey, CA 90292
221 North Figueroa Street, Suite 1200   tkitay@kitaylaw.net
14
Los Angeles, CA 90012
daugherty@lbbslaw.com      *Attorney for Defendants Redrock*
15
jantoun@lbbslaw.com       *NoHo Residential, LLC and Legacy*
                         *Partners Residential, Inc.*
16
Karen A. Feld
LEWIS BRISBOIS BISGAARD &   Tiffany P. Scarborough
17
SMITH LLP               MURPHY, CAMPBELL, et al.
650 Hospitality Lane, Suite 600    8801 Folsom Boulevard, Suite 230
18
Los Angeles, CA 92408       Sacramento, CA 95826
kfeld@lbbslaw.com         tscarborough@murphycampbell.com
19
                         *Attorney for Defendant FPI*
20
*Attorneys for Defendant Community*   *Management, Inc.*
*Redevelopment Agency for the City of*
*Los Angeles*
21

22
      I further certify that the foregoing will be served according to law on the
23
following party, which has not entered its appearance:

24
JSM Florentine
c/o Craig D. Jones
25
111 N. Pass Avenue
Burbank, CA 91505
26
                          /s/ Miriam Becker-Cohen
27
                          Miriam Becker-Cohen

28

- 26 -
Ling v. City of Los Angeles *et al.*, Case No. 2:11-cv-7774-SVW
Plaintiff's Memorandum of Law in Support of Opposition to the City of Los Angeles and the
Community Redevelopment Agency for the City of Los Angeles's Motions for Summary Judgment