UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:11-cv-07774-SVW-E | Date | November 14, 2012 |
|---|---|---|---|
| Title | Mei Ling v. City of Los Angeles California, et al. | | |

JS-6

| Present: The Honorable | STEPHEN V. WILSON, U.S. DISTRICT JUDGE | | |
|---|---|---|---|
| Paul M. Cruz | N/A | | |
| Deputy Clerk | Court Reporter / Recorder | | Tape No. |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: | |
| N/A | | N/A | |

**Proceedings:** IN CHAMBERS ORDER Re MOTIONS FOR SUMMARY JUDGMENT, MOTION TO SEVER, MOTION TO DISMISS, and MOTION TO WITHDRAW AS ATTORNEY OF RECORD [142] [143] [148] [149] [150] [151] [190] [197] [221]

## I.     INTRODUCTION

A detailed procedural background is provided in this Court's April 10, 2012 Order (see Dckt. 69) and its July 6, 2012 Order ruling (see Dckt. 109).  In sum, Plaintiff Mei Ling ("Plaintiff") brought the instant suit against the City of Los Angeles ("City"), the Community Redevelopment Agency of Los Angeles ("CRA"), RedRock NoHo Residential, LLC ("RedRock"), JSM Florentine, LLC ("JSM"), Legacy Partners Residential, Inc. ("Legacy"), FPI Management, Inc. ("FPI"), and Guardian/KW NoHO, LLC ("Guardian") for violations of the Rehabilitation Act, 29 U.S.C. § 794; the Fair Housing Act ("FHA"), 42 U.S.C. § 3601 *et seq.*; the California Fair Employment and Housing Act ("FEHA"), Cal. Govt. Code, § 12900 *et seq.*; the California Unruh Civil Rights Act, Cal. Civ. Code § 51 *et seq.*; and the California Disabled Persons Act, Cal. Civ. Code § 54 *et seq.*  In its previous rulings, the Court dismissed several of the claims, leaving only the following causes of action to be decided on summary judgment:

- Defendants FPI and Guardian: Violations of 42 U.S.C. §3604(f)(3) and California Civil Code Section 54.1(b)(3);
- Defendant RedRock: Violation of 42 U.S.C. § 3604(f)(3) and California Civil Code Section 54.1(b)(3);

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:11-cv-07774-SVW-E | Date | November 14, 2012 |
|---|---|---|---|
| Title | Mei Ling v. City of Los Angeles California, et al. | | |

- Defendant Legacy: Violations of 42 U.S.C. § 3604(f)(3), California Civil Code Section 54.1(b)(3), 42 U.S.C. § 3617, and Cal. Govt. Code § 12955.7
- Defendants City and CRA: Violation of 29 U.S.C. § 794.

See Order re Defendants' Motions to Dismiss (Dckt. 109); Order re City of Los Angeles's Motion for Judgment on the Pleadings and Plaintiff's Motion to Amend (Dckt. 138).

    For the reasons put forward in this Order, the Court GRANTS the CRA's motion for summary judgment (Dckt. 142), Guardian's motion for summary judgment (Dckt. 143), FPI's motion for summary judgment (Dckt. 148), RedRock's motion for summary judgment (Dckt. 149), Legacy's motion for summary judgment (Dckt. 150), and the City's motion for summary judgment (Dckt. 151).[1] Moreover, Guardian's motion to sever (Dckt. 190), Defendants' collective motion to dismiss (Dckt. 197), and Plaintiff's counsel motion to withdraw as attorney of record (Dckt. 221) are DENIED as MOOT. Finally, the Court VACATES all remaining hearings in this case.

## II.  FACTUAL BACKGROUND

    The facts are largely undisputed. Plaintiff is a 57-year-old woman who is restricted to a wheelchair. Ling Decl. ¶ 1. Due to Plaintiff's disability, she is unable to obtain employment. Ling. Decl. ¶ 8. Moreover, Plaintiff requires a live-in caregiver to help her with various tasks, and requires storage space for her wheelchair and other "adaptive equipment" to accommodate her disability. RedRock SUF ¶ 4.[2] Plaintiff's housing costs are subsidized through a Housing Choice Voucher ("Section 8") from the Housing Authority of the City of Los Angeles. Ling Decl. ¶¶ 8-9. Since 2006, Plaintiff has attempted to obtain affordable housing at several locations. Ling Decl. ¶¶ 11, 16-17. Plaintiff currently resides at The Piedmont (and has since June of 2009), an apartment complex located in North Hollywood. Ling Decl. ¶ 18. Plaintiff's apartment at The Piedmont is inadequate, however, because (among other things) the layout of the bathroom cannot be modified to install a roll-in ramp.

---

    [1] Defendant JSM did not appear in this action and default was entered against it on June 27, 2012. (Dckt. 108.)

    [2] "RedRock SUF" refers to Defendant RedRock's Statement of Uncontroverted Facts (Dckt. 149-6); similarly, "Legacy SUF" refers to Defendant Legacy's Statement of Uncontroverted Facts (Dckt. 150-4); "CRA SUF", Defendant CRA's Statement of Uncontroverted Facts (Dckt. 152-1); and "Guardian SUF", Defendant Guardian's Statement of Uncontroverted Facts (Dckt. 144).

|  | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:11-cv-07774-SVW-E | Date | November 14, 2012 |
|---|---|---|---|

| Title | Mei Ling v. City of Los Angeles California, et al. |
|---|---|

Ling Decl. ¶ 20-21.  As a result, Plaintiff currently leaves the premises several times a week in order to bathe properly.  Ling Decl. ¶ 20.

### A.  The Lofts

Both before and after moving into The Piedmont, Plaintiff sought to rent an apartment at The Lofts, a 292-unit apartment building owned by Defendant RedRock and managed by Legacy Partners.  RedRock SUF ¶¶ 8-9, Ling Decl. ¶¶ 39, 60, McCarter Decl. ¶ 8.[3]  The Lofts is subsidized by the CRA and the City.  CRA SUF ¶ 3.  Pursuant to an "Owner Participation Agreement," the CRA and the City provided RedRock with $14 million in federal funds that it had received.  CRA SUF ¶¶ 1, 3.  In return, RedRock promised to reserve twenty-eight (28) of The Lofts' 292 apartments for low-income occupants.  RedRock SUF ¶ 10.  The apartments at the Lofts have one of four types of floor plans: a 580-square-foot studio (the "Greek" units), a 750-square-foot studio (the "Mayan" units), a 930-square-foot studio (the "Kodak" units), and a 930-square-foot-one bedroom apartment (the "Pantages" units).  RedRock SUF ¶¶ 10-11.  Pursuant to the terms of their agreement with the CRA, RedRock designated ten (10) of the Greek units, fourteen (14) of the Mayan units, and four (4) of the Kodak units as affordable.  RedRock SUF ¶ 10, McCarter Decl. ¶ 4, Ex. A.  Their affordability is guaranteed by a covenant between the CRA and RedRock, and cannot be unilaterally altered by RedRock.  RedRock ¶¶ 9-10, 33.  None of the Pantages units are subject to the affordability covenant.  RedRock SUF ¶ 11.[4]

On August 10, 2007, Plaintiff submitted an application for an affordable unit at The Lofts.  Ling Decl. ¶ 30.  Plaintiff was put on a waitlist, and reached the top in December 2009.  RedRock SUF ¶ 12.  RedRock offered Plaintiff a Greek unit, and offered to install a wall partition in that or any other unit that was offered to Plaintiff in the "normal course of administration of the waiting list."  RedRock SUF ¶¶ 12-13, 32.  The wall partition would have, in effect, provided Plaintiff with her own room, giving her

---

[3] McCarter Decl. refers to the Declaration of Scott McCarter, President of Redwood Partners, Inc., which manages RedRock NoHo, LLC.  McCarter Decl. ¶ 2 (Dckt. 149-5).  Legacy managed The Lofts from December 2008 until January 1, 2012.  McCarter Decl. ¶ 8.

[4] Plaintiff disputes RedRock's assertion that it cannot unilaterally change the terms of the affordability covenant because the covenant only specifies that 10 of the Greek units, 14 of the Mayan units, and 4 of the Kodak units must be affordable, but does not designate *which* of those units must be made affordable.  However, Plaintiff does not dispute that RedRock cannot unilaterally change the requirement that of the 28 affordable units, 10 *must* be Greek units, 14 *must* be Mayan units, and 4 *must* be Kodak units.

|  | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:11-cv-07774-SVW-E | Date | November 14, 2012 |
|---|---|---|---|
| Title | Mei Ling v. City of Los Angeles California, et al. | | |

live-in caregiver a separate space in the apartment and affording Plaintiff the same privacy she would have received in a Pantages unit.  Plaintiff refused the Greek unit, asking, instead, for one of the market-rate Pantages units.  RedRock SUF ¶¶ 12-13, Ling Decl. ¶ 60, Ex. 16.  Defendants RedRock and Legacy refused.  RedRock SUF ¶ 15.  At the time Plaintiff's request was denied, the monthly, market-rate rent for a Pantages unit was $2410; the monthly, market-rate rent for the affordable units ranged from $543-$838, as specified in the terms of the agreement.  RedRock SUF ¶¶15-16.

    **B.  NoHo 14**

NoHo 14 is a 180-unit apartment building that was originally owned and developed by Defendant JSM.  Guardian SUF ¶¶ 2, 5.  NoHo 14 is located in the North Hollywood Redevelopment Project and is subject to the provisions of the Redevelopment Plan for the project area that, among other things, gives the CRA authority to approve certain discretionary development rights.  Crandall Decl. ¶ 6, Ex. B.[5]  As part of its development plan, JSM agreed to reserve seven (7) of NoHo 14's 180 units for low-income occupants in exchange for, among other things, a density bonus (the applicable zoning would have limited NoHo 14 to 142 units; in exchange for designating the seven units affordable, JSM was permitted to build up to 185 units).  Crandall Decl. ¶ 6, Ex. B.  In October of 2009, one of JSM's financiers foreclosed on NoHo 14.  Legacy SUF ¶ 6.  From October of 2009 until approximately September 2010, Legacy managed NoHo 14.  Legacy SUF ¶6.  Guardian acquired NoHo 14 on June 30, 2010, at which point it was required to assume JSM's promise that seven of the 180 units would be reserved for low-income occupants.  Guardian SUF ¶¶ 4-5.  Guardian also agreed that the initial selection for the low-income units would be done through a random lottery process that would be conducted by Guardian's property management company, FPI (Guardian replaced Legacy with FPI shortly after acquiring the property).  Guardian SUF ¶ 6.

As she had at The Lofts, Plaintiff repeatedly expressed interest in renting one of the seven affordable units at NoHo 14 by visiting the property several times and submitting applications for the units from 2008 to 2010.  Legacy SUF ¶¶ 15-16.  On December 14, 2010, Plaintiff visited NoHo 14 and was informed by FPI that there would a lottery for the rental of low-income units.  Guardian SUF ¶ 10.  FPI provided her with a rental application, which she returned on December 23, 2010.  Guardian SUF ¶¶ 11-12.  Upon returning her application, Plaintiff asked FPI to exempt her from the lottery process and award her one of the units because of her disability, which Guardian refused.  Guardian SUF ¶ 20.

---

[5] Crandall Decl. refers to the Declaration of Mindy Crandall, the senior managing director of Kennedy-Wilson Holdings, Inc., which is Guardian's parent corporation.  Crandall Decl. ¶ 1 (Dckt. 146).

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:11-cv-07774-SVW-E | Date | November 14, 2012 |
|---|---|---|---|
| Title | Mei Ling v. City of Los Angeles California, et al. | | |

Plaintiff was personally present at the lottery on December 28, 2010, and drew number seventy-nine. Guardian SUF ¶¶ 29-30. Plaintiff was placed on the waiting list in accordance with the number she drew at the lottery; by the time Guardian sold NoHo 14 in March of 2012, Plaintiff had not reached the top of the wait list. Guardian SUF ¶ 32.

### C. The Incident at NoHo 14

On November 1, 2009, Plaintiff, accompanied by three other individuals, visited NoHo 14 to follow up on the status of her applications and "express her reasonable accommodation requests." Ling Dep. 103. At the time, Legacy was managing NoHo 14; a Legacy employee gave Plaintiff and her companions a tour of the affordable units. Legacy SUF ¶ 20. At some point during the tour, Legacy's property manager, Tom Meredith, called the police based on reports that Plaintiff and her companions had barricaded the front door of the property, were refusing to leave, and refused to let anyone else enter. Meredith Decl. ¶ 4. Plaintiff was not, in fact, blocking the entrance to the building. Ling Decl. ¶ 95. Plaintiff and her companions peacefully exited the building with the police officers. Ling Decl. ¶ 94.[6]

### III. SUMMARY JUDGMENT LEGAL STANDARD

Rule 56(c) requires summary judgment for the moving party when the evidence, viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Tarin v. County of Los Angeles, 123 F.3d 1259, 1263 (9th Cir. 1997). "[I]n ruling on a motion for summary judgment, the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" Hunt v. Cromartie, 526 U.S. 541, 552 (1999) (quoting Anderson v.

---

[6] Plaintiff also alleges that Legacy called the police when she visited NoHo 14 October 10, 2009. However, Plaintiff's assertion relies entirely upon inadmissible evidence: in her declaration, Plaintiff states that during her visit, an unidentified man named Max told her that she had "better leave because they had called the police." Ling Decl. ¶ 89. Plaintiff also states that she later called the police station and "learned that Legacy had called the police and that officers arrived at the development after we left." Ling Decl. ¶ 89. Both the statements by "Max" and the police are hearsay that do not fall within any exception to the hearsay bar, and thus are inadmissible under Federal Rule of Evidence 802. Plaintiff offers no other evidence in support of her contention that the police were called after her October 10, 2009 visit.

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:11-cv-07774-SVW-E | Date | November 14, 2012 |
|---|---|---|---|
| Title | Mei Ling v. City of Los Angeles California, et al. | | |

Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)). "A justifiable inference is not necessarily the most likely inference or the most persuasive inference. Rather, an inference as to another material fact may be drawn in favor of the nonmoving party . . . if it is rational or reasonable." United Steelworkers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1542 (9th Cir. 1989) (internal citation and quotation marks omitted).

 The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). The moving party may satisfy its Rule 56(c) burden by "'showing'—that is, pointing out to the district court —that there is an absence of evidence to support the nonmoving party's case." Id. at 325. Once the moving party has met its initial burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and identify specific facts that show a genuine issue for trial. See id. at 323-24; Anderson, 477 U.S. at 248 (1986). A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact. Addisu v. Fred Meyer, 198 F.3d 1130, 1134 (9th Cir. 2000). Only genuine disputes over facts that might affect the outcome of the suit under the governing law —*i.e.*, "where the evidence is such that a reasonable jury could return a verdict for the nonmoving party"—will properly preclude the entry of summary judgment. See Anderson, 477 U.S. at 248.

 Under Local Rules 56-2 and 56-3, these triable issues of fact must be identified in the non-moving party's "Statement of Genuine Issues" and supported by "declaration or other written evidence." See also Sullivan v. Dollar Tree Stores, Inc., 623 F.3d 770, 779 (9th Cir. 2010) ("Federal Rule of Civil Procedure 56(e)(2) requires a party to 'set out *specific* facts showing a genuine issue for trial.'") (emphasis in original). If the non-moving party fails to identify the triable issues of fact, the court may treat the moving party's evidence as uncontroverted, so long as the facts are "adequately supported" by the moving party. Local Rule 56-3; see also International Longshoremen's Ass'n, AFL-CIO v. Davis, 476 U.S. 380, 398 n.14 (1986) ("[I]t is not [the Court's] task *sua sponte* to search the record for evidence to support the [parties'] claim[s]."); Carmen v. San Francisco United School District, 237 F.3d 1026, 1029 (9th Cir. 2001) ("A lawyer drafting an opposition to a summary judgment motion may easily show a judge, in the opposition, the evidence that the lawyer wants the judge to read. It is absurdly difficult for a judge to perform a search, unassisted by counsel, through the entire record, to look for such evidence.").

**IV.    DICUSSION**

  **A. Plaintiff's Reasonable Accommodation Claims Against Defendants FPI and
   Guardian**

|  | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:11-cv-07774-SVW-E | Date | November 14, 2012 |
|---|---|---|---|
| Title | Mei Ling v. City of Los Angeles California, et al. | | |

Plaintiff argues that Guardian and FPI failed to reasonably accommodate her disability in violation of the FHA, 42 U.S.C. § 3604(f)(3), and the California Disabled Person's Act ("DPA"), Cal. Civ. Code § 54.1(b)(3)(B).[7] Specifically, Plaintiff contends that the FHA and DPA required Guardian and FPI to alter their process of awarding the seven affordable units at NoHo 14 to the winners of the lottery and offer her one of those units before offering them to others.

42 U.S.C. § 3604(f)(3)(B) provides that it is unlawful to "refus[e] to make reasonable accommodations in rules policies, practices, or services, when such accommodations may be necessary to afford [a disabled] person equal opportunity to use and enjoy a dwelling." Thus, Section 3604(f)(3)(B) "imposes an affirmative duty upon landlords reasonably to accommodate the needs of handicapped persons." United States v. California Mobile Home Park Management Co., 29 F.3d 1413, 1416 (9th Cir. 1994). Under appropriate circumstances, the FHA imposes this duty "not only with regard to the physical accommodations, . . .but also with regard to the administrative policies governing rentals." Giebeler v. M&B Assocs., 343 F.3d 1143, 1147 (9th Cir. 2003) (citations omitted).

> To prevail on a claim under 42 U.S.C. § 3604(f)(3), a plaintiff must prove all of the following elements: (1) that the plaintiff or his associate is handicapped within the meaning of 42 U.S.C. § 3602(h); (2) that the defendant knew or should reasonably be expected to know of the handicap; (3) that accommodation of the handicap may be necessary to afford the handicapped person an equal opportunity to use and enjoy the dwelling; (4) that the accommodation is reasonable; and (5) that defendant refused to make the requested accommodation.

Dubois v. Ass'n of Apt. Owners, 453 F.3d 1175, 1179 (9th Cir. 2006) (citing 42 U.S.C. § 3604(f)(3)(B); California Mobile Home, 107 F.3d at 1380). Guardian and FPI dispute only the third and fourth elements of Plaintiff's reasonable accommodation claim: that her requested accommodation was not "necessary to afford [her] an equal opportunity to use and enjoy the dwelling" and that the accommodation was not reasonable.

---

[7] The reasonable accommodation provision of the DPA is substantially similar to that of the FHA and is analyzed in the same fashion. See Sabi v. Sterling, 183 Cal. App. 4th 916, 943 (Cal. App. 2010) ("[California Civil Code section54.1(b)(3)(B)] is largely identical to [the] one found in title 42 United States Code section 3604."); Rodriguez v. Morgan, 2012 WL 253867, at *5 (C.D. Cal. Jan. 26, 2012) ("[T]he same four elements under the FEHA criteria can establish a refusal to provide reasonable accommodation claim for the DPA.").

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:11-cv-07774-SVW-E | Date | November 14, 2012 |
|---|---|---|---|

| Title | Mei Ling v. City of Los Angeles California, et al. |
|---|---|

1. <u>Necessary to Afford and Equal Opportunity to Use and Enjoy the Dwelling</u>

To prove that an accommodation is "necessary to afford the handicapped person an equal opportunity to use and enjoy the dwelling" under Section 3604(f)(3), Plaintiff must show that "but for the accommodation, [she] likely will be denied an equal opportunity to enjoy the housing of [her] choice." <u>Giebeler</u>, 343 F.3d at 1155 (internal citations, quotation marks, and alterations omitted). In order to show that an accommodation is "necessary," a Plaintiff must first show that there is a causal link between the failure to accommodate and the Plaintiff's injury. <u>Id.</u> ("[W]ithout a causal link between defendants' policy and [P]laintiff's injury, there can be no obligation on the part of defendants to make a reasonable accommodation."). In other words, the proposed accommodation must directly ameliorate a disability's effects. <u>See Bryant Woods Inn, Inc. v. Howard County, Md.</u>, 124 F.3d 597, 604 (4th Cir. 1997) ("[I]f the proposed accommodation provides no direct amelioration of a disability's effect, it cannot be said to be 'necessary.'"). Here, Plaintiff's proposed accommodation would have directly ameliorated one of the effects of her disability: her inability to earn income. Defendants do not dispute that Plaintiff is unable to work because of her disability, and the Ninth Circuit has held that a disabled person's inability to earn income is an effect of a disability that must be reasonably accommodated under Section 3604(f). <u>See Giebeler</u>, 343 F.3d at 1155. By failing to give her one of the affordable units, Guardian and FPI prevented Plaintiff from living in any apartment in the building, because she could not otherwise afford a unit. Had they honored her requested accommodation, Guardian and FPI would have directly ameliorated her inability to earn income.

In addition to establishing causation, however, Plaintiff must also demonstrate that the requested accommodation was necessary to afford her an "*equal opportunity* to use and enjoy [the] dwelling." <u>Id.</u> (emphasis added). To show that she was denied an "equal opportunity," Plaintiff must demonstrate that Guardian and FPI's refusal to change the policy at issue denied her "an opportunity for which [she] would otherwise be qualified." <u>Id.</u> at 1156. Stated differently, Plaintiff must show that a particular policy or requirement for living at an apartment impairs her ability "use and enjoy the dwelling" in a way that *would not similarly impair a non-disabled person's use and enjoyment*. For example, an apartment encumbered with a "no pets" restriction denies a blind person an equal opportunity to use and enjoy the dwelling, because a blind person requires a seeing-eye dog. The "no pets" restriction renders the apartment useless to a blind person, but has no similar impact on a person with perfect vision. <u>See</u> 24 C.F.R. § 100.204(b). Similarly, a policy barring renters from having a co-signer denies a disabled person an equal opportunity to use and enjoy an apartment because with a cosigner, a disabled person could satisfy a landlord's "minimum income requirement and ensure that [the landlord] receives its monthly rent. [A disabled person] is similarly situated to other tenants at [the apartment complex] in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:11-cv-07774-SVW-E | Date | November 14, 2012 |
|---|---|---|---|
| Title | Mei Ling v. City of Los Angeles California, et al. | | |

terms of the financial resources he can bring to a tenancy at [there]. It is his way of demonstrating and deploying these resources that is different." Giebeler, 343 F.3d at 1156.

Here, by contrast, nothing about NoHo 14's process of awarding affordable units on the basis of a lottery denied Plaintiff an opportunity that, but for her disability, she would "otherwise be qualified." Plaintiff was not "otherwise qualified" to rent one of the seven affordable units because she did not meet a prerequisite for living there that has nothing to do with her disability: winning the lottery. Indeed, to the extent that Plaintiff's disability has kept her from working and earning income, her disability *enabled* her to qualify for the lottery in the first place. Neither Plaintiff's disability nor its effects denied her an "equal opportunity to use and enjoy" the apartments in a way someone without her disability would be able to. Therefore, the Court GRANTS Defendants FPI and Guardian's motions for summary judgment.

### B. Plaintiff's Reasonable Accommodation Claims Against Defendants RedRock and Legacy

Plaintiff further argues that by refusing to rent her a room with the Pantages floor plan, Defendants RedRock and Legacy failed to reasonably accommodate her disability in violation of the FHA and the DPA.[8] Similar to Guardian and FPI, Defendants RedRock and Legacy Defendants dispute only the third and fourth elements of Plaintiff's reasonable accommodation claim: that her requested accommodation was not "necessary to afford [her] an equal opportunity to use and enjoy the dwelling" and that the accommodation was not necessary.

#### 1. Necessary to Afford and Equal Opportunity to Use and Enjoy the Dwelling

Plaintiff's principal charge against RedRock and Legacy is that their agreement with the CRA to only include studio units in its affordability program failed to reasonably accommodate her disability. Plaintiff's contends that <u>none</u> of the affordable units at the Lofts offer her the privacy and space she requires to be afforded an equal opportunity to use and enjoy them. Plaintiff's disability requires her to have a live-in caregiver and requires the storage of bulky adaptive equipment. Moreover, Plaintiff needs space to maneuver back and forth in an apartment. While these privacy and space impacts are certainly effects of her disability, Plaintiff has failed to show the necessary causal link between the agreement between Defendants and the CRA to only renting studio units at affordable rates and her injury—that

---

[8] As noted above, the reasonable accommodation provision of the DPA is substantially similar to that of the FHA and is analyzed in the same fashion. See supra note 7.

|  | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:11-cv-07774-SVW-E | Date | November 14, 2012 |
|---|---|---|---|

| Title | Mei Ling v. City of Los Angeles California, et al. |
|---|---|

"*but for* the accommodation, [she] likely will be denied an equal opportunity to enjoy the housing of [her] choice." Giebeler, 343 F.3d at 1155 (internal citations, quotation marks, and alterations omitted) (emphasis added). Plaintiff requested that she be given one of the Pantages units, but in almost every respect, the Pantages units are the same as one of the units in the Lofts' affordable program: the Kodak units. Both units are 930 square feet. Indeed, because of its open floor plan, the Kodak units afford Plaintiff more space to maneuver than the Pantages units do. The only material difference between the Pantages and Kodak units is that the former are one bedrooms, while the Kodak floor plans are open studios. However, RedRock and Legacy informed Plaintiff that they would be willing to install a partition in any unit that was offered to Plaintiff in the "normal course of administration of the waiting list," thereby affording her the same privacy that the Pantages units offers. McCarter Decl. ¶ 9, Ex. C. In short, the requested accommodation was not *necessary* to afford her an "equal opportunity to use and enjoy the housing of [her] choice," because one of the units within the affordable program would have offered her substantially identical housing to that which she requested.[9]

      2.      Reasonableness

Moreover, Plaintiff has failed to show that the requested accommodation was "reasonable" within the meaning of Section 3604(f)(3). "[A]n accommodation is reasonable under the [FHA] when it imposes no fundamental alteration in the nature of the program or undue financial or administrative burdens." Giebeler, 343 F.3d at 1157. The Ninth Circuit in Giebeler explicitly left open the question of the burden of proof in demonstrating reasonableness in FHA claims. Though squarely holding that an FHA plaintiff has the initial burden of proof, the Giebeler Court explicitly left open the question of whether a plaintiff requesting an accommodation must produce evidence "that a reasonable accommodation was possible,"[10] or whether a plaintiff needs to show "that an accommodation seems

---

[9] The record indicates that, upon reaching the top of the waiting list, Plaintiff was offered one of the affordable 530 square-foot Greek units. However, Plaintiff's challenge was to RedRock and Legacy's agreement with the CRA to only reserve studio units for low income tenants, because her requested accommodation was for one of the non-affordable Pantages units. The Court need not speculate whether, had Plaintiff requested a Kodak unit, and had RedRock and Legacy refused it, RedRock and Legacy would have violated Section 3604(f), because Section 3604(f) claims only lie if a defendant refuses "to make *the requested* accommodation." Dubois v. Ass'n of Apt. Owners, 453 F.3d at 1179 (emphasis added).

[10] Plaintiff argues that all she needs to show is that the requested accommodation is "possible." This is incorrect: under this burden of proof, Plaintiff must show that *reasonable* accommodation is

|  | : |  |
|---|---|---|
| Initials of Preparer | | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:11-cv-07774-SVW-E | Date | November 14, 2012 |
|---|---|---|---|
| Title | Mei Ling v. City of Los Angeles California, et al. | | |

reasonable on its face, *i.e.,* ordinarily or in the run of cases." Giebeler, 343 F.3d at 1156 (internal citations and quotation marks omitted).  However, there is no need in this case to decide whether these two articulations state essentially the same allocation of burdens or differ in a way that would be outcome determinative.  Either description of the burden allocation leads to the same result in this case: Plaintiff's requested accommodation was not reasonable.

Plaintiff requested that RedRock and Legacy provide her with a "Pantages" floor plan room. However, none of Pantages rooms were restricted by affordable covenants; thus, Plaintiff was asking RedRock and Legacy to rent her a market-rate apartment unit at a discounted price.  Plaintiff contends that this requested accommodation was reasonable for two reasons.  First, Plaintiff argues that it is reasonable for RedRock and Legacy to designate a twenty-ninth unit affordable.  In essence, Plaintiff contends that the FHA requires RedRock and Legacy to rent her a market-rate apartment at below market rates, which would cost RedRock and Legacy at least $1572 a month.  Plaintiff has produced no evidence that this accommodation was "reasonable and possible" nor that it is reasonable "in the run of cases."  Plaintiff has failed to identify, nor has the Court found, any case holding a request that a landlord accept $1,500 less than market-rate rent "reasonable" under the FHA.  See Giebeler, 343 F.3d at 1154 ("We expect, for example, that mandating lower rents for disabled individuals would fail the . . . reasonableness inquiry[.]"); cf. 24 C.F.R. § 100.204(b) (noting that a mobility-impaired individual's request for a parking space near his unit is reasonable under the FHA).

Secondly, Plaintiff argues that RedRock and Legacy should have substituted a Pantages unit for an affordable studio unit: that is, that RedRock and Legacy should have transferred an affordable covenant from one unit to another.  Doing so would have required RedRock and Legacy to re-negotiate the terms of their agreement with the CRA, as demonstrated by RedRock's undisputed evidence that their agreement with the CRA specified that only studio units were subject to the affordability covenant.  See McCarter Decl. Ex. A at 2.  Again, Plaintiff has failed to introduce any evidence that this requested accommodation was reasonable, and has not pointed to any case in which a similar accommodation was found reasonable.

Therefore, the Court GRANTS Defendants RedRock and Legacy's motions for summary judgment on Plaintiff's reasonable accommodation claim.

**C. The City and the CRA's Liability**

---

possible. Giebeler, 343 F.3d at 1156.  This requires Plaintiff to introduce evidence that the requested accommodation was both "reasonable and possible." Id. at 1157.

|  | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:11-cv-07774-SVW-E | Date | November 14, 2012 |
|---|---|---|---|
| Title | Mei Ling v. City of Los Angeles California, et al. | | |

In its August 30, 2012 Order, this Court allowed Plaintiff to amend her Complaint as to the City and the CRA, but only for her claim under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794. Section 504 only applies to programs and entities that receive federal financial assistance. 29 U.S.C. § 794. As the Court noted in its August 30, 2012, the City and CRA could be liable under a theory of *respondeat superior*, if any of its sub-recipients violated Section 504. Here, as discussed above, only Redrock and Legacy received federal funds from the City and the CRA (for the construction and management of The Lofts). [11] Thus, the City's and the CRA's liability under Section 504 depends on whether Redrock and Legacy violated the Statute.

Section 504 of the Rehabilitation Act guarantees that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794. To prevail on a claim under Section 504, a plaintiff must establish that (1) she is an individual with a disability; (2) she is otherwise qualified to receive the benefits at issue; (3) she was denied the benefits of the program solely because of her disability; and (4) the program receives federal financial assistance. Zukle v. Regents of Univ. of Cal., 166 F.3d 1041, 1045 (9th Cir.1999).

Plaintiff contends that by denying her requested accommodations at The Lofts, Redrock and Legacy denied her the benefits of a program that receives federal financial assistance because of her disability. This claim fails because Plaintiff has failed to demonstrate that she was unable to use the affordable units *solely because of her disability*. Nowhere does Plaintiff argue that the affordable units at the Lofts were not handicap-accessible. Plaintiff was offered a unit that, although not her first preference, was in fact handicap-accessible—as a result, she could have participated in the benefits of the CRA's and the City's affordable housing program had she so desired. By contrast, the Court in Telesca v. Long Island Hous. P'ship, Inc. found that government agencies could be liable for a Section 504 violation only where a plaintiff was offered an affordable unit financed with federal funds that was handicap-*in*accessible: under those facts, the Court found that the plaintiff had stated a claim that she was denied the benefits of a program *solely* because of her disability. 443 F. Supp. 2d 397, 405 (E.D.N.Y. 2006). The contrast is clear: while the plaintiff in Telesca could not access the unit offered at all because of her disability, Plaintiff could have used and accessed the offered unit at The Lofts. Thus, Plaintiff has failed to demonstrate that she was denied any federally-funded benefit solely because of her

---

[11] NoHo 14 agreed to rent seven of its units at below-market rent in exchange for a density bonus from the CRA and the City.

|  | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:11-cv-07774-SVW-E | Date | November 14, 2012 |
|---|---|---|---|
| Title | Mei Ling v. City of Los Angeles California, et al. | | |

disability, and the Court GRANTS Defendants City of Los Angeles's and CRA's motions for summary judgment.

### D. Plaintiff's Intimidation Claim Against Legacy

Finally, Plaintiff alleged that by calling the police when she visited NoHo 14 on November 1, 2009, Defendant Legacy unlawfully intimidated her in violation of 42 U.S.C. § 3617 and Cal. Govt. Code § 12955.7.  Under Section 3617, it is

> unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by [42 U.S.C. §§ 3603, 3604, 3605, or 3606].

Accord Cal. Govt. Code § 12955.7 (substantially identical provision).

To establish a prima facie case of retaliation under Section 3617, Plaintiff must show that

> (1) she engaged in a protected activity; (2) the defendant subjected her to an adverse action; and (3) a causal link exists between the protected activity and the adverse action. If a plaintiff has presented a prima facie retaliation claim, the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for its decision. If the defendant articulates such a reason, the plaintiff bears the ultimate burden of demonstrating that the reason was merely a pretext for a discriminatory motive.

Walker v. City of Lakewood, 272 F.3d 1114, 1128 (9th Cir. 2001) (internal citations omitted).

Plaintiff has established a prima facie case of retaliation.  Plaintiff visited NoHo 14 on November 1, 2009 to submit applications for NoHo 14's affordable units, follow up on the status of her applications, "express her reasonable accommodation requests," and assist others in seeking housing at NoHo 14.  At a minimum, making a request for a reasonable accommodation is a protected activity under Sections 3617 and 3604(f).  Matarese v. Archstone Pentagon City, 795 F. Supp. 2d 402, 443 (E.D. Va. 2011) aff'd in part, vacated in part on other grounds sub nom. Matarese v. Archstone Communities, LLC, 468 F. App'x 283 (4th Cir. 2012) (noting that an allegation that an adverse action was taken because of a plaintiff's "repeated requests for reasonable accommodations" supported a Section 3617

|  | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:11-cv-07774-SVW-E | Date | November 14, 2012 |
|---|---|---|---|
| Title | Mei Ling v. City of Los Angeles California, et al. | | |

claim). Legacy does not contest that calling the police during Plaintiff's visit was an "adverse action" under Section 3617, nor that a causal link exists between the protected activity and the adverse action.

However, Legacy has met its burden of articulating a legitimate, non-discriminatory reason for its decision. NoHo 14's property manager, Tom Meredith, called the police based on reports that Plaintiff and her companions had barricaded the front door of the property, were refusing to leave, and refused to let anyone else enter. Meredith Decl. ¶ 4. Although Plaintiff has introduced evidence that she and her companions were not, in fact, blocking the ingress and egress to the property, that evidence is immaterial: Meredith's good-faith belief that Plaintiff was blocking the entrance was a legitimate, non-discriminatory reason to call the police. See Cal. Penal Code § 602(o) (making it a misdemeanor to "[r]efus[e] or fail[] to leave land, real property, or structures belonging to or lawfully occupied by another and not open to the general public, upon being requested to leave by . . . the owner, the owner's agent, or the person in lawful possession."). Moreover, Plaintiff does not dispute that Meredith actually believed that she and her companions were blocking the entrance to NoHo 14.[12]

Finally, Plaintiff has not met her burden of demonstrating that the Legacy's legitimate, non-discriminatory reason for calling the police was merely a pretext for a discriminatory motive. The only evidence Plaintiff offers to show that Meredith's proffered reason was pretextual was that Plaintiff and her companions were, in fact, not blocking the entrance to NoHo 14. This inaccuracy, by itself, is not enough to demonstrate that Meredith in fact called the police to intimidate her from exercising her statutorily-protected rights. Plaintiff has identified no other evidence, direct or circumstantial, that would allow the inference that Meredith's true reason for calling the police was anything more than his belief that she was blocking the entrance to the premises. Cf. Walker, 272 F.3d at 1130-31 (finding that a Section 3617 plaintiff had established a genuine issue of material fact as to whether the city's purported reason for canceling its contract with plaintiff—that plaintiff had not complied with the contract's terms—was pretextual where, among other things, the plaintiff had introduced evidence that it was in compliance with the contract).

---

[12] Plaintiff objects that the reports upon which Meredith relied are hearsay that cannot be considered under Federal Rule of Evidence 802. However, the reports are only being offered to establish Meredith's state of mind—that he believed that Plaintiff and her companions were blocking the entrance—and not for their truth. See 29 Am. Jur. 2d Evidence § 674 ("Among the kinds of out-of-court statements that have been held admissible as having been offered for a nonhearsay purpose are . . .statements relating to the state of mind of the listener.").

|  | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:11-cv-07774-SVW-E | Date | November 14, 2012 |
|---|---|---|---|
| Title | Mei Ling v. City of Los Angeles California, et al. | | |

Thus the Court GRANTS Defendant Legacy's motion for summary judgment on Plaintiff's intimidation claim.

**V.     CONCLUSION**

As described in greater detail above, the Court finds that Plaintiff has failed to produce a triable issue of fact as to any of her claims. As a matter of law, the FHA did not require Guardian and FPI to alter the terms of their agreement with the CRA, which provided that the affordable units would be awarded to the winners of the lottery. The FHA is designed to ameliorate the effects of Plaintiff's disability, but does so only by guaranteeing her an opportunity for which she would otherwise be qualified. Unlike Giebeler, where the plaintiff was otherwise qualified to rent a unit in the apartment building except for one of the effects of his disability (his inability to earn income), Plaintiff was not, except for the effects of her disability, otherwise qualified to rent one of the affordable units at NoHo 14 for the simple reason that she had not won the lottery.

Moreover, as a matter of law, the FHA did not require Redrock and Legacy to alter the terms of their agreement with the CRA, which provided that only studio units would be rented out at affordable prices. As established above, Plaintiff's requested accommodation was not necessary to ameliorate the effects of her disability because one of the units in the affordable program gave her as much space and privacy as the requested unit did. Moreover, Plaintiff did not meet her burden of demonstrating that the requested accommodation was reasonable, as it would have required Redrock and Legacy to rent out one of their units at below-market rate or to renegotiate the terms of their agreement with the CRA.

Furthermore, Plaintiff's claims against the City and the CRA under Section 504 of the Rehabilitation Act fail because Plaintiff has failed to establish that she was unable to participate in the affordable housing program solely because of her disability. Indeed, she was offered an affordable unit that was handicap-accessible, and turned it down because she preferred a different one.

Finally, Plaintiff's intimidation claim against Legacy fails because Legacy has articulated a legitimate, non-discriminatory reason for calling the police during Plaintiff's November 1, 2009 visit to NoHo 14—reports that Plaintiff was blocking the entrances to the building—and Plaintiff has failed to meet her burden of proving that the proffered reason was pretextual.

Thus, for these reasons and the ones discussed in greater detail in this Order, the Court GRANTS the CRA's motion for summary judgment (Dckt. 142), Guardian's motion for summary judgment (Dckt. 143), FPI's motion for summary judgment (Dckt. 148), RedRock's motion for summary judgment

|  | : |  |
|---|---|---|
| Initials of Preparer | PMC | |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:11-cv-07774-SVW-E | Date | November 14, 2012 |
|---|---|---|---|
| Title | Mei Ling v. City of Los Angeles California, et al. | | |

(Dckt. 149), Legacy's motion for summary judgment (Dckt. 150), and the City's motion for summary judgment (Dckt. 151).

     Defendant Guardian KW NoHO, LLC's motion to sever (Dckt. 190) is DENIED AS MOOT. Defendants' collective motion to dismiss Plaintiff's Third Amended Complaint (Dckt. 197) is DENIED AS MOOT; as the Court made clear in its August 30, 2012 Order, Plaintiff was only granted to leave to amend her Second Amended Complaint on her Rehabilitation Act claims against the City and the CRA. Although Plaintiff's Third Amended Complaint (Dckt. 141) recited several other causes of action against other Defendants, Plaintiff was not granted leave to amend on those claims; thus, for every claim except her Rehabilitation Act claim against the City and the CRA, Plaintiff's Second Amended Complaint was the operative complaint.

     Plaintiff's only remaining action in this case is its claims against Defendant JSM. It appears that JSM is a bankrupt entity; moreover, JSM never appeared in this action, and on June 27, 2012, this Court granted Plaintiff's request for entry of default against JSM. Plaintiff has not since moved for default judgment: accordingly, the Court, on its own motion, dismisses Plaintiff's claim against Defendant JSM for lack of prosecution. Finally, because Plaintiff has no remaining claims against any defendant, Plaintiff's counsel's motion to withdraw as attorney of record (Dckt. 221) is DENIED AS MOOT.

                                                                                                                             :

Initials of Preparer                            PMC